**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| AMERICAN EAGLE OUTFITTERS, INC. and RETAIL ROYALTY COMPANY<br><br>　　　　Plaintiffs,<br><br>　　　　　　　v.<br><br>AMERICAN EAGLE FURNITURE, INC., d/b/a TITANIC FURNITURE; WOODFIELD FURNITURE, INC.; GURNEE MILLS FURNITURE, INC.; TONY ARCHUILITI, JAY NOURI, TAMMAN ABOUSSAF, OUDIE ABOUSSAF, and HOUSSAM ALCHRITI, individually and doing business as AMERICAN EAGLE FURNITURE and TITANIC FURNITURE,<br><br>　　　　Defendants. | Civil Action No. 1:11−CV−02242<br><br>Judge Edmond E. Chang |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT ON THE ISSUES OF DEFENDANTS' LIABILITY FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION, CANCELLATION OF TRADEMARK REGISTRATION NO. 3,428,434, AND DEFENDANTS' AFFIRMATIVE DEFENSES**

Lisa Pearson
Charles H. Hooker III
KILPATRICK TOWNSEND & STOCKTON LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
212.775.8700

Debra R. Bernard
Jeremy L. Buxbaum, Ph.D.
PERKINS COIE LLP
131 South Dearborn Street
Suite 1700
Chicago, Illinois 60603-5559
312.324.8400

October 1, 2012

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS .............................................................................................4

    AEO's AMERICAN EAGLE Lifestyle Brand ......................................................4

    AEO's AMERICAN EAGLE Marks ..................................................................7

    Defendants' Progressive Encroachment Of AEO's AMERICAN EAGLE Marks ...........8

    AEO's Awareness Of Defendants And Attempts To Resolve This Dispute ...................13

    The Irreparable Harm To AEO's Brand ...........................................................14

ARGUMENT ..............................................................................................................15

    I.    AEO IS ENTITLED TO SUMMARY JUDGMENT ON THE
             ISSUE OF DEFENDANTS' LIABILITY FOR TRADEMARK
             INFRINGEMENT AND UNFAIR COMPETITION ...........................................15

          A.    The AMERICAN EAGLE Marks Are Valid And
                Enforceable .............................................................................16

          B.    Defendants' Use of AMERICAN EAGLE FURNITURE
                Has Created A Likelihood Of Confusion Between
                Defendants' Goods And Services And AEO's Goods And
                Services ..................................................................................17

                1.    The AMERICAN EAGLE Marks Are Strong ..............................19

                2.    Defendants' Marks Are Extremely Similar To
                      AEO's AMERICAN EAGLE Marks ........................................20

                3.    There Has Been Rampant Actual Confusion In The
                      Marketplace ........................................................................22

                4.    The Area And Manner Of The Parties Use of Their
                      Respective Marks Overlaps Substantially .....................................23

                5.    Defendants Offer Identical Retail Services And
                      Overlapping Goods ................................................................24

                6.    Consumers Shopping For Defendants' Relatively
                      Low Priced Furniture Are Likely To Exercise A
                      Low Degree Of Care With Respect To Branding .........................26

i

7.      Defendants' Have Acted In Bad Faith By Targeting AEO's Retail Venues And Willfully Ignoring AEO's Demand Letters ..................................................................27

II.    THE AEF DESIGN MARK REGISTRATION SHOULD BE CANCELLED BECAUSE AEF HAS NEVER USED IT FOR "WHOLESALE STORES" AND IT WAS FRAUDULENTLY OBTAINED ......................................................................................28

A.     Defendants Never Have Used The AEF Design Mark For"Wholesale Stores"..................................................................29

B.     Defendant American Eagle Furniture Knowingly Made False And Misleading Statements To The USPTO To Secure Its Registration ..................................................................31

III.   DEFENDANTS' AFFIRMATIVE DEFENSES SHOULD BE REJECTED ................................................................................................33

A.     Defendants Cannot Establish Laches Because They Progressively Encroached, AEO Did Not Unreasonably Delay, And Defendants Cannot Show Prejudice ......................................33

B.     AEO's Well-Known AMERICAN EAGLE Marks Are Not Generic ..............................................................................................34

IV.   INJUNCTIVE RELIEF IS PROPER ....................................................35

CONCLUSION.................................................................................................35

# TABLE OF AUTHORITIES

**Cases**

*AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796 (7th Cir. 2002) .................................. 33

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................ 15

*Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350 (Fed. Cir. 2009) ............................. 29

*CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660 (7th Cir. 2001) ....................................... *passim*

*Cent. Mfg. Co. v. Brett*, 78 U.S.P.Q.2d 1662 (N.D. Ill. 2005) ...................................... 31

*Computer Care v. Serv. Sys. Enter., Inc.*, 982 F.2d 1063 (7th Cir. 1992) .................................. 27

*Edison Bros. Stores, Inc. v. Nat'l Dev. Grp., Inc.*, No. 89-0612-Z, 1992 WL 55465
    (D. Mass. March 6, 1992) ........................................................ 24

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000) ......................... 20, 21, 27

*Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764 (N.D. Ill. 2011) ........................... 34

*Gaffrig Performance Indus. v. Livorsi Marine, Inc.*, Nos. 99 C 7778, 99 C 7822,
    2003 WL 23144859 (N.D. Ill. Dec. 22, 2003) .................................... 32

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325 (7th Cir. 1977) ............. 18, 22

*Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352 (7th Cir. 1983) ........................................ 20

*In re Marion L. Lonegro*, No. 76/695,362, 2010 WL 1720589 (T.T.A.B. Apr. 12,
    2010) ...................................................................................... 31

*In re Monograms Am. Inc.*, No. 75/089,735, 51 U.S.P.Q.2d 1317 (T.T.A.B. Feb.
    12, 1999) ................................................................................ 31

*In re N.Y. Fragrance, Inc.*, No. 75/194,506, 1999 WL 651608 (T.T.A.B. Aug. 17,
    1999) ..................................................................................... 21

*In re Retail Royalty Co.*, No. 77791067, 2011 WL 1060724 (T.T.A.B. Mar. 9,
    2011) ..................................................................................... 19

*In re wTe Corp.*, 87 U.S.P.Q.2d 1536 (T.T.A.B. 2008) ................................................... 31

*Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc.*, 205 F.2d 921 (7th
    Cir. 1953) .............................................................................. 33

*Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir. 1988) ......... 22, 25, 26

*Intermed Commc'ns. Inc. v. Chaney*, 197 U.S.P.Q. 501 (T.T.A.B. 1977)..................................31

*James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976) ..........19, 20, 25

*Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942 (N.D. Ill. 2002) ................................33

*La Zaza Trattoria, Inc. v. Lo Bue*, No. 12 C 135, 2012 WL 3308846 (N.D. Ill. Aug. 10, 2012) ..................................................................................................................33

*Lettuce Entertain You Enters. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777 (N.D. Ill. 2010) ........................................................................................................21, 22, 27

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)..................................15

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111 (7th Cir. 1997) ..................20

*Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp. 2d 868 (N.D. Ill. 2008)............................................................................................................................*passim*

*Nature Conservancy v. Wilder Corp. of Del.*, 656 F.3d 646 (7th Cir. 2011)..............................34

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985)........................................17, 34

*Peaceable Planet, Inc. v. Ty, Inc.*, 185 F. Supp. 2d 893 (N.D. Ill. 2002) ..................................16

*Perfumania, Inc. v. Perfulandia, Inc.*, 279 F. Supp. 2d 86 (D.P.R. 2003)..................................24

*Pirelli Armstrong Tire Corp. v. Titan Tire Corp.*, 4 F. Supp. 2d 794 (C.D. Ill. 1998) ............................................................................................................................16

*Promatek Indus., Ltd v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002)......................................27

*Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 03 C 6070, 2004 WL 2967446 N.D. Ill. 2004)......................................................................................23, 26, 27

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947 (7th Cir. 1992) ....................25, 28

*Schutt Mfg. Co. v. Ridell*, 673 F.2d 202 (7th Cir. 1982) ...........................................................35

*Sethness-Greenleaf, Inc. v. Green River Corp.*, No. 89–C–9203, 1994 WL 67830 (N.D. Ill. Feb. 11, 1994) ..................................................................................................16

*Sparks Tune-Up Ctrs., Inc. v. Panchevre*, No. 90 C 4369, 1992 WL 211029 (N.D. Ill. Aug. 21, 1992)...................................................................................................16

*Specht v. Google, Inc.*, 758 F. Supp. 2d 570 (N.D. Ill. 2010)....................................................30

*TE-TA-MA Truth Found.--Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662 (7th Cir. 2002) ..............................................................................................34

*The Forum Corp. of N. Am. v. The Forum, Ltd.*, 903 F.2d 434 (7th Cir. 1990) .............. 21, 23, 24

*Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609 (7th Cir. 1965) .................. 19, 22, 24, 27

*Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029 (N.D. Ill. 2001).................... 26

*Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001).................................... *passim*

*Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366 (7th Cir. 1976),
    *superseded on other grounds* ........................................................ 19, 20, 22

*Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862 (7th
    Cir. 1983)................................................................................. 22

*WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07-CV-3885, 2009 WL
    6825247 (N.D. Ill. 2009) ............................................................... 31

*World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir.
    1971)..................................................................................... 22

*Zip Dee, Inc. v. Domestic Corp.,* 900 F. Supp. 1004 (N.D. Ill. 1995) ..................... 31, 32

**Statutes**

15 U.S.C. § 1051(a) ......................................................................... 29

15 U.S.C. § 1053............................................................................. 29

15 U.S.C. § 1058............................................................................. 17

15 U.S.C. § 1064(1) ...................................................................... 29, 32

15 U.S.C. § 1065............................................................................. 17

15 U.S.C. § 1114(1) ......................................................................... 35

15 U.S.C. § 1115(b) ..................................................................... 17, 19

15 U.S.C. § 1116............................................................................. 35

15 U.S.C. § 1119.......................................................................... 29, 32

15 U.S.C. § 1127............................................................................. 29

Fed. R. Civ. P. 56(a) ....................................................................... 15

**Other Authorities**

*McCarthy On Trademarks & Unfair Competition* (4th ed. 2012) ........................ *passim*

v

Plaintiffs American Eagle Outfitters, Inc. and Retail Royalty Company (collectively, "AEO") submit this memorandum in support of their motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs seek an order entering judgment against Defendants on the issue of their liability for trademark infringement and unfair competition (as alleged in the First, Second, Sixth, and Seventh Claims in the First Amended Complaint) and enjoining Defendants' unlawful conduct; cancelling U.S. Trademark Registration No. 3,428,434 (as alleged in AEO's Fourth Claim for Relief); and striking Defendants' affirmative defenses of genericness and laches. Now that discovery has come to a close, the Court may enter judgment as a matter of law to stop Defendants' infringing acts, which are harming AEO's valuable reputation and good will and causing widespread confusion among consumers.

## PRELIMINARY STATEMENT

AEO operates the highly successful AMERICAN EAGLE OUTFITTERS chain of retail stores, offering privately branded apparel, accessories, home furnishings, and other lifestyle products under the well-known AMERICAN EAGLE OUTFITTERS and AMERICAN EAGLE marks (the "AMERICAN EAGLE Marks"). AEO first used the AMERICAN EAGLE Marks as early as 1977, and currently owns and operates more than 900 retail stores in the United States as well as its e-commerce store *www.ae.com*. Due to AEO's substantial sales and marketing efforts over the past 35 years, AEO has established strong common law rights in, and built a robust portfolio of trademark registrations for, the AMERICAN EAGLE Marks. AEO has earned an enviable reputation and developed considerable goodwill symbolized by the AMERICAN EAGLE Marks.

In 2009, Defendants began opening AMERICAN EAGLE FURNITURE retail stores in Chicago area shopping malls where AEO was already operating AMERICAN EAGLE

OUTFITTERS stores. Defendants opened their first retail store in the Gurnee Mills Mall in 2009, followed by stores in the Fox Valley and Woodfield Malls in 2010. Defendants' retail store signage clearly evoked AEO's signage through the use of similar capitalization, colors, and typeface:



American Eagle Outfitters
Typical Store Signage



American Eagle Furniture
Woodfield Mall



American Eagle Furniture
Fox Valley Mall



American Eagle Furniture
Gurnee Mills Mall

Massive consumer confusion has ensued. The record reflects well over 100 instances of actual confusion ranging from misdirected deliveries, to customers believing AEO's consumer-loyalty program rewards could be redeemed at Defendants' stores, to consumers stating that they "didn't know American Eagle had furniture stores."

Upon learning of Defendants' AMERICAN EAGLE FURNITURE retail stores, AEO promptly sent Defendants demand letters. Defendants ignored AEO's letters, leaving AEO no choice but to file this lawsuit to protect its valuable AMERICAN EAGLE brand. Discovery is now complete, and the material facts establishing Defendants' liability for trademark infringement and unfair competition as a matter of law are not in dispute. Indeed, the record on this motion is largely stipulated. *See* Point I below.

2

Defendants claim they have been doing business under the name AMERICAN EAGLE FURNITURE since 2005, and so AEO's claims are barred by laches. Defendants Tamman and Oudie Aboussaf incorporated their closely held company American Eagle Furniture, Inc. ("AEF") in 2005 but, as they testified during their depositions, Defendants did not operate any AMERICAN EAGLE FURNITURE retail stores at the time. Rather, they sold furniture wholesale under the name Titanic Furniture.

In 2007, AEF applied to register the design mark depicted below (the "AEF Design Mark") for "wholesale stores" selling furniture:



Because AEO did not sell furniture through wholesale channels or use a similar slogan or stylization, it did not oppose registration of the AEF Design Mark at the time. AEO decided to wait and see how AEF used the mark, knowing it could petition to cancel the mark or file an infringement lawsuit if Defendants' use created a likelihood of confusion in the marketplace.

Over time, Defendants have expanded their use of AMERICAN EAGLE FURNITURE and their channels of trade. They have progressively encroached upon AEO's rights by opening retail stores selling furniture and home furnishings under the AMERICAN EAGLE FURNITURE word mark down the hall from AMERICAN EAGLE OUTFITTERS stores in shopping malls. Once AEO learned that Defendants had entered AEO's trade channels prominently using unadorned AMERICAN EAGLE FURNITURE and AMERICAN EAGLE word marks, AEO promptly took action. AEO's claims are not barred by laches. Point III below.

3

Through discovery in this action, AEO has learned that at the time AEF filed its trademark application, it knew but failed to disclose to the U.S. Patent and Trademark Office ("PTO") that (i) AEF was not using the AEF Design Mark for wholesale stores and (ii) a third party was already using the AMERICAN EAGLE FURNITURE mark for wholesale furniture services before AEF adopted that mark. AEF's trademark registration should therefore be cancelled on the grounds of non-use and fraud on the PTO. *See* Point II below.

## STATEMENT OF FACTS

The facts supporting this motion are summarized below and more fully set forth in the Declarations (and supporting exhibits) of Frederick Grover, Katherine Eshleman, Rebecca Gibbs, and Charles Hooker, as well as the additional declarations (annexed to the Hooker Declaration) of Amanda Alaimo, Annabelle Gonzalez, Annette Hoffmann, Chloe Bowman, Cortney Masur, Dan Sparling, Erin Phillips, Fawne Turner, Jessie Behnken, Jilian Minjoe, Lisa Vogel, Lynn Stewart, Marcie Kwasman, Mark Stalter, Melissa Nelson, Mirna Sanchez, and Taylor Edidin, concerning actual confusion. Citations to declarations are in the form "[Declarant Surname] Decl." and citations to the deposition transcripts attached to the Declaration of Charles Hooker are in the form "[Surname] Dep."

## AEO's AMERICAN EAGLE Lifestyle Brand

AEO designs, markets, and sells apparel, accessories, and lifestyle products ranging from fragrances to home furnishings, under the marks AMERICAN EAGLE OUTFITTERS and AMERICAN EAGLE. Grover Decl. ¶¶ 5, 7, 10, Exs. 3, 5. AEO sells well-designed, high-quality merchandise at affordable prices, and—as Defendants concede—it operates retail stores under the AMERICAN EAGLE Marks and is known as AMERICAN EAGLE. *Id.*; Hooker Decl. Ex. 11 (Defendants' Objections and Responses to Plaintiffs' First Requests to Admit ("Defs. Resp. to

RTA")) ¶¶ 25-29.

Over the past 35 years, AEO has built its AMERICAN EAGLE brand into one of the most popular and highly respected lifestyle brands. Grover Decl. ¶ 4. It opened its first AMERICAN EAGLE OUTFITTERS retail store in 1977, and now operates more than 900 in the United States. *Id.* AEO also has repeatedly launched other retail ventures over the years, including AERIE BY AMERICAN EAGLE, 77kids BY AMERICAN EAGLE, and MARTIN + OSA retail stores and e-commerce sites. Grover Decl. ¶ 18. AEO's multiple brand extensions have conditioned the public to expect AEO to launch new retail sub-brands—an expectation that makes AEO particularly vulnerable to those, like Defendants, who would free ride on the enormous good will symbolized by the AMERICAN EAGLE Marks in retail channels. *Id.* ¶ 24.

The strength of AEO's AMERICAN EAGLE brand has translated into billions of dollars of retail sales per year in recent years. *See* Grover Decl. ¶ 14, Exs. 7, 8. AEO's U.S. sales revenues for 2007, 2008, 2009, 2010, and 2011 have been $▮ billion, $▮ billion, $▮ billion, $▮ billion, and $▮ billion, respectively. *Id.*

AEO's AMERICAN EAGLE OUTFITTERS retail stores are handsome, well-designed spaces that provide a total shopping experience. *Id.* ¶ 7. More than ▮% of these stores are located in shopping malls. *Id.* ¶ 4. While AEO is perhaps best known as an apparel company, its stores carry a broad range of products to round out its lifestyle brand. *Id.* ¶ 10. For example, focusing on furniture and home furnishings, AEO has offered chairs, stools, rugs, lamps and lighting fixtures, curtains, blankets, pillows, towels, cushions, hampers, bulletin boards, magazine racks, clocks, picture frames, coffee mugs, plates and eating utensils, home fragrances, laundry and bar soaps, linen sprays, weight scales and other goods for use in the home. *Id.* ¶ 10,

Ex. 5; *see also* Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 77, 79, 80).[1] 

Grover Decl. ¶¶ 22-23.

AEO uses its

Hooker Decl. Ex. 8

(Kubinski Dep. 29:4-8, 43:2-15). AEO also uses its website, www.ae.com (which averages ▇ million visitors per month), its Facebook page (with ▇ million fans, ▇▇ of which reside in the Chicago area), and its AERewards loyalty program (with ▇ million members) to popularize the AMERICAN EAGLE Marks. *Id.* 27:18-23. In addition, AEO promotes its marks extensively on television, in print ads, on billboards, and in a variety of other media. Grover Decl. ¶ 12. Every year since 2006, AEO has spent well over $▇ million marketing its goods and services under the AMERICAN EAGLE Marks. Eshleman Decl. ¶ 4, Ex. 1.

AEO's marketing efforts target a broad swath of consumers ranging in age from preteens and teenagers to their parents. For example, ▇▇% of the active customers' known ages in AEO's customer database and over ▇▇% of the members of AEO's customer loyalty program are over the age of ▇▇. Hooker Decl. Ex. 8 (Kubinski Dep. 30:8-12;. 42:1-16); Grover Decl. ¶ 11.

In addition to its own marketing efforts, AEO receives widespread media coverage.

---

[1]Notably, during the period 2004-2005, AEO offered a furniture and home furnishings line known as 1ST APT that included "chairs, ottomans, stools, and small tables, things to be used in living rooms, bedrooms, [and] desk type of end uses . . . ." Hooker Decl., Ex. 7 (McCormick Dep. 24:6-14; 30:17-31:9). AEO's ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* 17:4-8. Defendants concede that, over the years, AEO has sold a wide variety of lifestyle products, including outdoor equipment, apparel, and home furniture, furnishings and accessories, such as lamps, rugs, chairs, cushions, blankets, books, candles, wall clocks, and picture frames; and AEO owns numerous U.S. trademark registrations for its AMERICAN EAGLE Marks. Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 77, 79, 80).

Independent ranking entities have consistently ranked AEO's AMERICAN EAGLE brand as one of the top retail brands, and it enjoys high levels of brand awareness among consumers, well in excess of industry standards. *Id.* ¶¶ 15-16, Exs. 9-10. Long before they opened their retail stores, Defendants themselves knew that AMERICAN EAGLE OUTFITTERS "is a well know[n] shopping mall clothing store." Hooker Decl. Ex. 34 (AEF Resp. to PTO Office Action) Ex. 3 (T. Aboussaf Dep. 38:12-40:1), Ex. 11 (Defs. Resp. to RTA ¶¶ 25-38).

## AEO's AMERICAN EAGLE Marks

Retail Royalty Company, a wholly owned subsidiary of American Eagle Outfitters, Inc. owns all rights in the AMERICAN EAGLE Marks and licenses them to AEO's retail entities. *Id.* (¶¶1-23); Gibbs Decl. ¶ 3. In addition to common law rights developed through use of the marks in commerce, Retail Royalty owns and licenses to AEO numerous registered trademarks for the AMERICAN EAGLE Marks in connection with retail and online services, clothing, accessories, furniture, and home furnishings (among many other goods and services). Gibbs Decl. ¶¶ 4, 6, Ex. 1. Defendants admit that all of these registrations are valid, subsisting, and in full force and effect, and that Registration No. 3,033,841 for AMERICAN EAGLE and Registration Nos. 2,086,693, 1,893,331, 1,916,360, 2,050,115, and 2,344,282 for AMERICAN EAGLE OUTFITTERS are incontestable pursuant to Section 15 of the Lanham Act, 15 U.S.C. § 1065. *Id.* ¶ 5; Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 1-23), Ex. 10 (ECF No. 37 (Defs. Answer to First Amended Compl. ("Answer") ¶¶ 29, 30, 31).

As a result of AEO's extensive use and promotion of its lifestyle brand, AEO has built and now owns valuable goodwill symbolized by the AMERICAN EAGLE Marks. Grover Decl. ¶ 17. The strength of the AMERICAN EAGLE Marks, the success of AEO's brand, and the fact that consumers associate the AMERICAN EAGLE Marks exclusively with AEO is evident from

7

unsolicited, popular press reports. *Id.* (¶¶ 23-24). As but one example, Interbrand Design

Forum's *The Most Valuable U.S. Retail Brands 2011* recently ranked AEO as the 38th most

valuable retail brand in the United States. Grover Decl. ¶ 16, Ex. 9.

**Defendants' Progressive Encroachment Of AEO's AMERICAN EAGLE Marks**

Defendants Tamman and Oudie Aboussaf are principals in Defendant AEF, which, since

July 8, 2005, has operated as a wholesale furniture supplier under the name Titanic Furniture.

Hooker Decl. Ex. 10 (Answer ¶ 12-13, 32), Ex. 3 (T. Aboussaf Dep. 59:15-19, Ex. 6), Ex. 4 (O.

Aboussaf Dep. 9:17-25, 12:16-18, 21:9-12, 47:7-49:11). Titanic Furniture sells wholesale

furniture through a catalog and website (*www.titanicfurniture.com*) and maintains a warehouse

from which wholesale orders are shipped or made available for pick up. *Id.* (15:9-11). Neither

Titanic's catalog, nor its website, nor its warehouse display the AMERICAN EAGLE

FURNITURE word mark or the AEF Design Mark. *Id.* Ex. 3 (T. Aboussaf Dep. at 23:10-22,

58:11-19), Ex. 11 (Defs. Resp. to RTA ¶ 49).

AEF applied to the PTO to register the AEF Design Mark for "*wholesale stores* featuring

furniture," claiming a date of first use of July 8, 2005. Hooker Decl. Exs. 32, 34, 38. The PTO

initially refused registration on several bases, including that "[t]here may be a likelihood of

confusion" with AEO's AMERICAN EAGLE OUTFITTERS mark, as reflected in a then-

pending application AEO had filed before AEF filed its application. *Id.* Ex. 33 (PTO Office

Action), Ex. 11 (Defs. Resp. to RTA ¶ 53). In response to this initial refusal, AEF amended its

application to seek a service mark registration and emphasized that the AEF Design Mark:

> . . . is an elaborate original patriotic scene that sets the mark apart from any other mark
> for similar goods or services. Further, as presently amended, the services that are
> associate[d] with the mark are directed to the Wholesale furniture market. Purchasers at
> the wholesale level are typically more sophisticated than average consumers; they are
> aware of the marks of the merchants they deal with as typically wholesale furniture is
> bought in large lots for resale in retail outlets.

Hooker Decl. Ex. 34 (emphasis in original), Ex. 11 (Defs. Resp. to RTA 54(a)-(i)). AEF also pointed out that AEO's "stores are directed to the retail purchaser who buys items singly, and not for resale. There is little lik[e]lihood that the purchasers of wholesale furniture would be confused that bulk purchases of furniture em[a]nate from American Eagle Outfitters." *Id.* Finally, AEF stressed that "AMERICAN EAGLE OUTFITTERS does not use an elaborate American Eagle and flag design with their mark. Applicants' [*sic*] use their marks in different channels of trade and the marks each give a different commercial impression." *Id.*

AEO did not oppose AEF's application in the PTO. Gibbs Decl. ¶ 9. While AEO vigorously protects its trademarks, the AEF Design Mark was not a high priority at the time because AEO did not operate wholesale stores nor did it use the slogan or the patriotic design elements in the AEF Design Mark. *Id.* ¶¶ 7-8. AEO chose to wait to see whether the AEF Design Mark created any likelihood of confusion in the marketplace, knowing it could petition to cancel AEF's registration or file a civil action if necessary in the future. *Id.* ¶ 9.

The PTO registered the AEF Design Mark on May 13, 2008, Registration No. 3,428,434. *Id.* ¶ 9. Through discovery in this action, AEO has learned that AEF procured its registration for the AEF Design Mark by making false representations to the PTO. Specifically, AEF knew but failed to disclose to the PTO that it has never operated "wholesale stores" under the AEF Design Mark. Hooker Decl. Ex. 4 (O. Aboussaf Dep. 29:22-30:23), Ex. 3 (T. Aboussaf Dep. 20:20-22, 56:5-14). Moreover, Defendants knew but failed to disclose to the PTO that another company, American Eagle Furniture Corp., located at 107 Trumball Street, Elizabeth, New Jersey 02706, offered wholesale furniture and related wholesale services under the mark AMERICAN EAGLE FURNITURE and that this company's use predated its own. *Id.* Ex. 11 (Defs. Resp. to RTA ¶¶ 55(a)-(c), 56-57), Ex. 10 (Answer ¶ 37-40). Nevertheless, on November 21, 2006, AEF

9

submitted a declaration to the PTO stating that its mark was in use for "wholesale stores" and "to the best of [its] knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive." *Id.* Ex. 34. This statement was ratified in AEF's March 3, 2008 Statement of Use. *Id.* Ex. 38.

Over time, Defendants expanded their operations and use of the AMERICAN EAGLE FURNITURE word mark. In 2009, Defendants AEF, Tamman Aboussaf, Oudie Aboussaf, and Jay Nouri incorporated Defendant Gurnee Mills Furniture, Inc. and opened an AMERICAN EAGLE FURNITURE retail furniture store in the Gurnee Mills Mall in Gurnee, Illinois. *Id.* Ex. 10 (Answer ¶¶ 9, 11, 15-16, 43), Ex. 3 (T. Aboussaf Dep. at 25:4-11, 26:21-27:19; 30:25-31:2, 21:22-32:1). In March 2010, Defendants AEF, Tamman Aboussaf, and Oudie Aboussaf authorized Defendants Tony Archuiliti and Houssam Alchriti to open a second AMERICAN EAGLE FURNITURE retail furniture store in the Fox Valley Mall in Aurora, Illinois. *Id.* (26:13-17, 27:14-19-30:4, 32:5-33:17), Ex. 6 (T. Archuiliti Dep. 11:13-25, 12:11-14:1), Ex. 10 (Answer ¶¶ 15-16, 44-45).[2] Shortly thereafter, in or about May 2010, Defendants AEF, Tamman Aboussaf, Oudie Aboussaf, and Jay Nouri incorporated Defendant Woodfield Furniture, Inc. and opened an AMERICAN EAGLE FURNITURE retail furniture store in Woodfield Mall in Schaumburg, Illinois. *Id.* (¶ 9-10, 14, 42, 45). The individual defendants personally directed, controlled, and approved the conduct of which AEO complains. *Id.* (¶¶ 9-16, 42-45).

---

[2] In addition, Defendants Tony Archuiliti and Houssam Alchriti "directed, controlled, and operated the Gurnee Mills store for approximately two months after the Fox Valley store closed on February 28, 2011." Answer ¶ 43.

The signage of Defendants' retail stores, shown on page 2 above, bore a striking resemblance to the signage AEO employs for its AMERICAN EAGLE OUTFITTERS stores across the country.[3] *Id.* (¶ 20), Ex. 11 (Defs. Resp. to RTA ¶¶ 43-45). Defendants admit that, prior to the date they opened the AMERICAN EAGLE FURNITURE stores in each of these malls, there was already an AMERICAN EAGLE OUTFITTERS retail store in operation in that mall. *Id.* Ex. 11 (Defs. Resp. RTA ¶¶ 36-38). In some of these malls, AEO was already operating MARTIN + OSA and AERIE BY AMERICAN EAGLE stores as well. Grover Decl. ¶¶ 27-29. Defendants' Fox Valley store closed around February 28, 2011, and the Gurnee Mills store closed around July 21, 2011, while this action was pending. Hooker Decl. Ex. 10 (Answer ¶¶ 9, 11, 15-16). The Woodfield store remains open with a slightly altered storefront shown below. *Id.* Ex. 11 (Defs. Resp. to RTA ¶ 46).



In each of their retail stores, Defendants offered "stylish, trendy furniture at a modest price," *id.* Ex. 4 (O. Aboussaf Dep. 63:13-23), and they have used the word mark AMERICAN EAGLE FURNITURE on signage, price tags, hang tags, placards, fliers, and other materials, and have also sold furniture bearing those marks on hang tags and packaging. *Id.* Ex. 3 (T. Aboussaf Dep. Ex. 17), Ex. 31. In some instances, they have used the mark AMERICAN EAGLE as well, *id.* (Answer ¶ 48), and while they deny that they refer to AMERICAN EAGLE FURNITURE as

---

[3] Defendants admit these are true and correct photographs of the parties' respective store entrances. *Id.* Ex. 11 (Defs. Resp. to RTA ¶¶ 43-45), Ex. 10 (Answer ¶ 20).

AMERICAN EAGLE for short, they did so repeatedly in their depositions. *E.g.*, *id.* Ex. 3 (T. Aboussaf Dep. at 20:8-14, 25:16-20, 22:4-23:9, 28:4-13, 91:22-92:16; 97:18-:98:3), Ex. 5 (Nouri Dep. 14:9-11, 15:14-18, 23:17-25; 27:17-19, 31:13-16, 38:15-25, 40:11-13, 54:3-55:8, 57:16-18, 75:2-4, 76:10-11, 96:4-6).

Not surprisingly, Defendants' use of the AMERICAN EAGLE FURNITURE and AMERICAN EAGLE marks has caused widespread actual confusion among consumers as to Defendants' relationship with AEO. Defendants themselves admit that, on two occasions, delivery personnel have delivered packages intended for an AMERICAN EAGLE FURNITURE store to an AMERICAN EAGLE OUTFITTERS store. *Id.* Ex. 11 (Defs. Resp. to RTA ¶ 76), Ex. 10 (Answer ¶ 49). They further admit that there have been "some instances where AEO customers may have inquired about the relationship between AMERICAN EAGLE FURNITURE and AEO." *Id.* (¶ 49), *see also* Ex. 11 (Defs. Resp. to RTA ¶ 75).

Beyond these admissions, AEO has collected seventeen witness statements memorializing well over 100 individual instances of actual confusion between Defendants' use of AMERICAN EAGLE or AMERICAN EAGLE FURNITURE in connection with its retail services and products, on the one hand, and the AMERICAN EAGLE Marks and AEO's goods and services, on the other. [4] Representative examples from the actual-confusion declarations compiled in Exhibits 12-28 to the Hooker Decl. include:

- "[O]n multiple occasions while I was greeting customers at the front of the Woodfield 77kids Store and explaining that we are an American Eagle brand, customers said 'Oh yeah, we saw your brand's furniture store in the mall, too.'" *Id.* Ex. 22 (Vogel Decl. ¶ 8).

- "On at least two (2) separate occasions, adult female customers [in the Fox Valley AEO Store] asked me when AEO opened a furniture store." *Id.* Ex. 13 (Gonzalez Decl. ¶ 5).

---

[4] Defendants have stipulated to "treat these declarations as in-court witness statements, which may be used by Plaintiffs in lieu of witness testimony at trial." *Id.* Ex. 9 (Gibbs Dep. 75:2-76:16).

- While "I was in Fox Valley Mall on February 13, 2010, I walked up to the American Eagle Furniture Store to observe it. As I approached the store, I noticed a mother with her teenage son near me. I heard the son say that the American Eagle Store was a gross store for AEO to open." *Id.* Ex. 23 (Stewart Decl. ¶ 5).

- "While I was in the [Woodfield Mall American Eagle Furniture] store, I overheard a woman say to what appeared to be her daughter, 'I didn't know American Eagle had furniture stores?'" *Id.* Ex. 25 (Stalter Decl. ¶ 3).

- "In July 2011, an adult female shopper walked into the Gurnee Mills AEO Store and asked me whether I could tell her where 'your furniture store is located in the mall.'" *Id.* Ex. 26 (Nelson Decl. ¶ 5).

- "Between July and December 2011, I answered at least six phone calls at the Gurnee Mills AEO Store from adult male and female callers who asked if AEO was American Eagle Furniture." *Id.* Ex. 26 (Nelson Decl. ¶ 6).

- "While the American Eagle Furniture Store was in operation in the Fox Valley Mall, on at least two (2) occasions between Spring and Summer 2011, shoppers in the store asked me if American Eagle Furniture was affiliated with AEO. On one of those occasions, in May 2011, while I was ringing up the purchase of an adult female customer at the Fox Valley AEO Store, the customer asked me when AEO closed their furniture store." *Id.* Ex. 20 (Behnken Decl. ¶ 6).

- In the "spring 2011, an adult woman in the [Woodfield Aerie by American Eagle] Store asked me whether she could use her AEO rewards coupon at American Eagle Furniture." *Id.* Ex. 15 (Bowman Decl. ¶ 6).

Notwithstanding the widespread confusion in the marketplace, their admitted knowledge of several instances of actual confusion and their elimination of the differentiating factors they cited to the PTO in arguing that there was no likelihood of confusion between the parties' respective marks, Defendants have not only continued to offer retail services and furniture under AMERICAN EAGLE FURNITURE, but plan to open AMERICAN EAGLE FURNITURE stores "all over." *Id.* Ex. 3 (T. Aboussaf Dep. 219:11-17), Ex. 4 (O. Aboussaf 63:24-64:14).

**AEO's Awareness Of Defendants And Attempts To Resolve This Dispute**

AEO's retail store employees recall responding to such misdirected deliveries and confused consumers during the early spring of 2010. *Id.* Ex. 17 (Sparling Decl. ¶¶ 3-4; Stewart

Decl. ¶¶ 4-5). AEO's management and legal counsel became aware of Defendants' AMERICAN

EAGLE FURNITURE retail stores around June 4, 2010. *Id.* Ex. 9 (Gibbs Dep. 59:23-60:14,

62:17-63:12); Gibbs Decl. Ex. 2. Within a week, on June 11, 2010, AEO sent demand letters to

Defendants requesting that they "cease and desist from all use of the marks AMERICAN

EAGLE FURNITURE and AMERICAN EAGLE for retail goods and services." *Id.* ¶ 11; Hooker

Decl. Ex. 11 (Defs. Resp. to RTA ¶ 68), Ex. 10 (Answer ¶ 50). Defendants received these letters,

but did not respond. *Id.*, *see also* Ex. 11 (Defs. Resp. to RTA ¶ 69). Again on July 7 and August

20, 2010, AEO sent follow up demand letters repeating AEO's demands. *Id.* (¶ 70), Ex. 10

(Answer ¶ 51). Again, Defendants ignored the letters. *Id.* (¶ 52), Ex. 11 (Defs. Resp. to RTA ¶

71), Ex. (T. Aboussaf Dep. 157:23-158:14, 159:20-163:22). AEO therefore filed this action on

April 1, 2011 to protect its brand and the valuable goodwill symbolized by its marks.

**The Irreparable Harm To AEO's Brand**

AEO has no control over the quality of the retail products or services Defendants have

offered, and are continuing to offer, under the AMERICAN EAGLE FURNITURE mark. *Id.* Ex.

11 (Defs. Resp. to RTA ¶ 65-67); Grover Decl. ¶¶ 26, 31. Invoices produced by Defendants

reflect numerous quality issues and customer complaints regarding their products. Hooker Decl.

Ex. 5 (Nouri Dep. 58:2-162:21), Ex. 30 (Joint Fact Stipulations ¶¶ 37-95). For example, furniture

purchased from one of Defendants' AMERICAN EAGLE FURNITURE retail stores frequently

has been delivered to customers "broken," "damaged," "defective," with missing parts,

"chipped," ripped, stained, or "rusting." *Id.* (¶¶ 37-95), *see also* Ex. 25 (Stalter Decl.) ¶ 4 (AEF's

retail "furniture appeared to me to be of low quality. As I looked at the furniture, I recall thinking

that it did not fit in with the image of Woodfield Mall, which I have always perceived as

consisting of higher-end retail stores that sell high quality products.").

Because consumers are likely to believe that AEO stands behind Defendants' retail stores when in fact it does not, AEO's reputation and brand are being substantially and irreparably harmed and tarnished by Defendants' actions. Grover Decl. ¶ 31. Additionally, Defendants' ongoing use of AMERICAN EAGLE FURNITURE in AEO's core retail channel of trade obstructs AEO's natural zone of expansion. *Id.*

## ARGUMENT

### I. AEO IS ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF DEFENDANTS' LIABILITY FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial,'" and judgment may be entered in favor of the moving party as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 261 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

AEO is entitled to summary judgment in its favor on its trademark infringement and unfair competition claims under federal and state law. To prevail on its claims of trademark infringement under Section 32(1) and unfair competition under Section 43(a) of the Lanham Act, the federal trademark statute, AEO "must establish that (1) [its] mark[s] [are] protectable and (2) [Defendants'] use of [their marks] is likely to cause confusion among consumers." *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001); *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001).[5] The same elements establish a violation of the Illinois Uniform

---

[5] Section 32(1) of the Lanham Act addresses infringement of registered marks, while Section 43(a) is a broader prohibition against unfair competition including, *inter alia*, infringement of common law rights arising from use. 5 *McCarthy* § 27:14. Under both sections, likelihood of confusion is the touchstone of infringement. *CAE*, 267 F.3d at 673.

Deceptive Trade Practices Act and unfair competition under Illinois common law. *Pirelli Armstrong Tire Corp. v. Titan Tire Corp.*, 4 F. Supp. 2d 794, 799 (C.D. Ill. 1998). As demonstrated below, the undisputed facts of record establish the liability of all Defendants on AEO's First, Second, Sixth and Seventh claims for relief. The individual Defendants, as owners of closely held corporations and operators of the AMERICAN EAGLE FURNITURE retail stores, are individually liable because they personally participated in, and are responsible for overseeing or directing the infringing activities. *Peaceable Planet, Inc. v. Ty, Inc.*, 185 F. Supp. 2d 893, 896 -897 (N.D. Ill. 2002).[6]

### A.     The AMERICAN EAGLE Marks Are Valid And Enforceable

AEO owns strong common law rights in the AMERICAN EAGLE Marks for retail services and a wide variety of goods, including furniture and home furnishings, based on its extensive and continuous use of those marks predating any rights Defendants can claim in AMERICAN EAGLE FURNITURE.  Moreover, AEO owns numerous registrations for the AMERICAN EAGLE Marks, including but not limited to Registration No. 3,797,646 for AMERICAN EAGLE and Registration Nos. 3,797,646, 3,888,496, 2,086,693, 4,017,672, and 4,015,234 for AMERICAN EAGLE OUTFITTERS, covering retail store services; and Registration No. 3,490,875 for AMERICAN EAGLE OUTFITTERS covering chairs, stools, rugs, cushions, hampers, bulletin boards, and picture frames. Gibbs Decl. ¶ 6, Ex. 1; Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 1-23). AEO's registration certificates are "prima facie evidence of the validity of the registered mark and of the registration of the mark, of the

---

[6] *See also Sethness-Greenleaf, Inc. v. Green River Corp.*, No. 89–C–9203, 1994 WL 67830, at *7 (N.D. Ill. Feb. 11, 1994) (corporate officer who personally participates in the infringing activity is personally liable for the infringement); *Sparks Tune-Up Ctrs., Inc. v. Panchevre*, No. 90 C 4369, 1992 WL 211029, at *6 (N.D. Ill. Aug. 21, 1992) (recognizing that a corporate officer is individually liable for trademark infringement when he "performs the act or does the things that the patent or trademark law protects against).

registrant's ownership of the mark, and of the registrant's exclusive right to use the registered

mark in commerce or in connection with the goods or services specified in the registration . . . ."

15 U.S.C. § 1115(a). Once a registration becomes incontestable, the certificate serves as

"conclusive evidence" of the mark's validity and the registrant's ownership and exclusive rights

to use the marks in commerce in connection with all of the goods identified in the registration.

*See* 15 U.S.C. § 1115(b); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 192, 198

(1985).

Defendants admit that the AEO registrations cited above, among others, are valid,

subsisting, and in full force and effect, and that AEO's Registration No. 3,033,841 for

AMERICAN EAGLE and Registration Nos. 2,086,693, 1,893,331, 1,916,360, 2,050,115, and

2,344,282 for AMERICAN EAGLE OUTFITTERS are incontestable pursuant to Sections 8 and

15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065. Hooker Decl. Ex. 11 (¶¶ 1-23). These

admissions are fatal to Defendants' genericness defense, because a valid trademark can never be

generic. J. Thomas McCarthy, 2 *McCarthy On Trademarks & Unfair Competition* (4th ed. 2012)

("*McCarthy*") 12:1. *See* Point III.B below. AEO clearly has enforceable trademark rights in its

well-known AMERICAN EAGLE Marks.

   **B.    Defendants' Use of AMERICAN EAGLE FURNITURE Has Created A
          Likelihood Of Confusion Between Defendants' Goods And Services And
          AEO's Goods And Services**

Likelihood of confusion is determined by evaluating a non-exhaustive list of factors

including: (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the

products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by

consumers; (5) the strength of plaintiff's mark; (6) whether any actual confusion exists; and (7)

the defendant's intent to palm off its goods as those of the plaintiffs. *Helene Curtis Indus., Inc. v.*

*Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977); *see also* 4 *McCarthy* § 24:37. In assessing likelihood of confusion, courts do not focus solely on the likelihood that a consumer will mistakenly purchase the wrong product or service; in addition, "[t]he Lanham Act protects against . . . initial interest confusion, which occurs when a customer takes interest in a product because of the similarity of a mark, even if the customer realizes the actual source of the products before completing a sale." *Miyano Mach. USA, Inc. v. Miyanohitec Mach., Inc.*, 576 F. Supp. 2d 868, 885 (N.D. Ill. 2008).

 No single factor is dispositive in the likelihood of confusion analysis. The Court may assign varying weights to the factors, and consider other marketplace realities, based on the facts of the case before it. *CAE*, 267 F.3d at 678. Generally, "however, three of the factors are likely to be particularly important: the similarity of the marks, the defendant's intent, and actual confusion." *Id.*; *see also Ty*, 237 F.3d at 902. Here, Defendants have misappropriated AMERICAN EAGLE—the salient feature of both AMERICAN EAGLE and AMERICAN EAGLE OUTFITTERS—and paired it with the three syllable word FURNITURE in lieu of the three syllable word OUTFITTERS; they opened retail stores using signage evocative of AEO's signage; they did so in the very same malls where AEO already had retail stores, with knowledge of AEO's prior rights; they forged ahead with their infringing activities even after the PTO pointed out the potential for confusion and even after AEO sent them multiple demand letters; and they have caused widespread actual confusion in the marketplace. *E.g.*, Hooker Decl. Exs. 35-37 (AEO's letters), Ex. 10 (Answer ¶¶ 42-49), Ex. 11 (Defs. Resp. to RTA 25-38, 43-47). While these facts alone are sufficient, other factors confirm that Defendants' uses of the AMERICAN EAGLE FURNITURE marks is likely to create—and *is* creating—confusion. This is not a close case. The evidence proving likelihood of confusion is for the most part stipulated,

18

and it is overwhelming.

### 1. The AMERICAN EAGLE Marks Are Strong

"The 'strength' of a trademark refers to the mark's distinctiveness, meaning its propensity to identify the products or services sold as emanating from a particular source." *CAE*, 267 F.3d at 684. Marks are strong when they are inherently distinctive and have longstanding use, a high volume of goods or services sold under them, and extensive marketing expenditures promoting them. *Id.* at 684-85. "'Strong' marks are given 'strong' protection—protection over a wide range of related products and services and variations on visual and aural format." 2 *McCarthy* § 11:73; *see also CAE*, 267 F.3d at 684. Because a strong mark "is more likely to be remembered and more likely to be associated in the public mind with a greater breadth of products or services," confusion is more likely when a junior user employs a similar mark for related goods or services. *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266 (7th Cir. 1976); 2 *McCarthy* § 11:73.

AEO owns incontestable registrations for each of the word marks at issue. "[I]f a mark has become 'incontestable' . . . then lack of distinctiveness of such a mark cannot be raised in litigation." *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 377 (7th Cir. 1976), *superseded on other grounds*; 15 U.S.C. § 1115(b).

Beyond this fact, the AMERICAN EAGLE Marks are inherently distinctive. 2 *McCarthy* § 11:4 ("Fanciful, arbitrary and suggestive marks are regarded as being 'inherently distinctive.'"). AMERICAN EAGLE is arbitrary for the goods and services at issue. *See Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 611 (7th Cir. 1965) (A mark is arbitrary when "it in no way suggests or describes [the] services [or products sold under it]"; holding AMERICANA mark as applied to hotels is arbitrary). AMERICAN EAGLE OUTFITTERS is, at worst, suggestive, and AEO submits it is arbitrary. *See In re Retail Royalty Co.*, No. 77791067, 2011 WL 1060724, at *5 (T.T.A.B. Mar. 9, 2011).

The commercial strength of the AMERICAN EAGLE Marks in the marketplace is amply demonstrated by their duration of use, annual sales, advertising and marketing expenditures,

unsolicited media coverage, independent consumer surveys, and rankings. *E.g.*, Grover Decl. ¶¶ 6-9, 12-16, Exs. 1-4, 6-10; Eshleman Decl. ¶ 4, Ex. 1. Defendants themselves concede that AMERICAN EAGLE OUTFITTERS is well-known in the context of shopping malls. Hooker Decl. Ex. 34 (Office Action Resp.), Ex. 11 (Defs. Resp. to RTA ¶¶ 25-26), Ex. 10 (Answer ¶ 18). This factor, therefore, clearly weighs in AEO's favor.

### 2. Defendants' Marks Are Extremely Similar To AEO's AMERICAN EAGLE Marks

The similarity of the marks is one of "the most important considerations" in the likelihood of confusion analysis. *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 462 (7th Cir. 2000). The greater the similarity between the marks at issue, the greater the likelihood of confusion. *Ty*, 237 F.3d at 898. Because consumers have imperfect recollections of marks, they are likely to confuse a mark they have come to know in one context with a similar mark they encounter in another. *Id.*; *Ever-Ready*, 531 F.3d at 382. For this reason, "[w]hen attempting to determine if two marks are similar, the comparison should be made 'in light of what happens in the marketplace, [and] not merely by looking at the two marks side-by-side.'" *Ty*, 237 F.3d at 898 (quoting *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1115 (7th Cir. 1997); *accord Sign of the Beefeater*, 540 F.2d at 275).

"[T]his Circuit adheres to the rule that 'if one word or feature of a composite trademark is the salient portion of the mark, it may be given greater weight than the surrounding elements.'" *Ty*, 237 F.3d at 898 (quoting *Henri's Food Prods. Co. v. Kraft, Inc.*, 717 F.2d 352, 356 (7th Cir. 1983)). For example, in *Ty*, the Seventh Circuit held that, because the word BEANIE was a well-known part of the plaintiff's BEANIE BABIES mark for plush dolls, it was "the more salient portion of the mark [and therefore] it may be given greater weight than the surrounding elements." *Id.* at 899; *Lettuce Entertain You Enters. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d

777, 785 (N.D. Ill. 2010) ("The proper inquiry for a family of marks is to inquire whether the defendant's mark appropriated the salient feature of the family of marks"). One reason for this rule is that consumers often shorten mark to its most salient portion. *See The Forum Corp. of N. Am. v. The Forum, Ltd.*, 903 F.2d 434, 440 (7th Cir. 1990). As previously noted, AEO is known as AMERICAN EAGLE, and its brand is commonly referred to as the AMERICAN EAGLE brand. Defs. Resp. to RTA ¶¶ 25-26; *see, e.g.*, *In re N.Y. Fragrance, Inc.*, No. 75/194,506, 1999 WL 651608, at *2 (T.T.A.B. Aug. 17, 1999) (holding OUTFITTERS "clearly subordinate to the words 'AMERICAN EAGLE'" and that "the words 'AMERICAN EAGLE' alone would likely be used in calling for [AEO's] goods and services"). Of course, AEO also owns common law rights as well as trademark registrations for AMERICAN EAGLE as a standalone mark.

Defendants have prominently incorporated AMERICAN EAGLE into their AMERICAN EAGLE FURNITURE word mark and AEF Design Mark. On their retail store signage, they have not used the AEF Design Mark at all. Instead, they present the AMERICAN EAGLE FURNITURE word mark in a stylizations highly evocative of AEO's retail store signage. Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 43-45), Ex. 10 (Answer ¶ 47). Defendants further concede they have shortened AMERICAN EAGLE FURNITURE to AMERICAN EAGLE. *Id.* (¶ 48). Use of an identical mark weighs heavily in favor of confusion. *CAE*, 267 F.3d at 678.

Defendants will no doubt point to their use of the word FURNITURE as a differentiator. But courts in this Circuit have repeatedly held that the addition of a generic term does nothing to differentiate a defendant's use. *Eli Lilly*, 233 F.3d at 463 (addition of HERB did not distinguish HERBROZAC from plaintiff's PROZAC). Moreover, Defendant AEF expressly disclaimed FURNITURE in its Office Action Response to the PTO (Hooker Decl. Ex. 34), thereby effectively conceding that AMERICAN EAGLE forms the salient portion of their marks. *See*

21

*Lettuce Entertain You Enters.*, 703 F. Supp. 2d at 785. In addition, FURNITURE, like
OUTFITTERS, is a three syllable dictionary word. If AEO were to open a standalone furniture
store, AMERICAN EAGLE FURNITURE would be the most intuitive name for it. Finally, as
noted above, Defendants adopted signage strikingly similar to that already in use by AEO. The
similarity of the marks demonstrates the great likelihood of confusion.

### 3. There Has Been Rampant Actual Confusion In The Marketplace

"[R]eliable evidence of actual confusion is practically almost impossible to secure"
because "confusion often go[es] unreported or unrecorded. Persons who are truly confused will
often never be aware of the deception. Others who were confused and later learned of their
deception will often not bother to report the fact." 4 *McCarthy* 23:12. For this reason, likelihood
of confusion "can be proven without any evidence of actual confusion," but when "such
evidence [is] available, [it] is entitled to substantial weight." *Helene Curtis Indus.*, 560 F.2d at
1330. "[S]ince reliable evidence of actual confusion is difficult to obtain . . . any such evidence is
substantial evidence of likelihood of confusion." *Tisch Hotels*, 350 F.2d at 612.

Accordingly, "while very little proof of actual confusion would be necessary to prove the
likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute
such proof." *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1089 (7th Cir.
1988) (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir.
1971)). Even isolated instances of actual confusion are given substantial weight by the courts.
*E.g.*, *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb, Inc.*, 698 F.2d 862, 867 (7th Cir.
1983) (one instance of a customer mistakenly returning plaintiff's product to defendant held
substantial evidence of confusion); *Ever-Ready*, 531 F.2d at 383-85 (three instances of actual
confusion probative of likelihood of confusion); *see also The Forum Corp. of N. Am.*, 903 F.2d

at 443 (clear error for district court to discount actual confusion testimony from two witnesses and evidence of phone calls from other persons confused about the identities of the parties).

Here, the record reflects **well over 100 instances of actual confusion** ranging from misdirected packages (*id.* (evidence of a misdirected package by a common courier supports a finding of actual confusion)) to consumers seeking to use their AERewards points to purchase furniture at Defendants' stores (*Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, 03 C 6070, 2004 WL 2967446, at *8-9 N.D. Ill. 2004) (instances showing consumers were initially confused between the parties' marks demonstrated actual confusion)). It is rare indeed to find so much evidence of actual confusion in a trademark case, and this evidence is no doubt "just the tip of the iceberg" because most actual confusion goes unreported. Grover Decl. ¶ 30.

### 4.    The Area And Manner Of The Parties Use of Their Respective Marks Overlaps Substantially

In analyzing the "area and manner of concurrent use," courts "consider[s] whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *The Forum Corp. of N. Am.*, 903 F.2d at 442. "The parties' lines of business need not be the same . . . ; [the parties] need not be in direct competition and their goods and services need not be identical." *Id.* Likelihood of confusion increases when the parties offer overlapping products or services or market to the same consumer segment. *Ty*, 237 F.3d at 900; *CAE*, 267 F.3d at 681.

Here, the parties' use their marks for retail stores and furniture. They prominently display their marks on retail store signage on their storefronts and inside their stores and rely heavily on that signage to attract foot traffic at their malls. Grover Decl. ¶ 8; Hooker Decl. Ex. 8 (Kubinski Dep. 29:4-8, 43:2-15), Ex. 3 (T. Aboussaf Dep. 114:4-8; 198:20-199:1). They use their marks on hangtags, invoices, and similar consumer-facing documents. *Id.* (T. Aboussaf

23

Dep. Ex. 17); Grover Decl.¶ 7, Ex. 3. In short, both parties use AMERICAN EAGLE "as the

first component of the[ir] names," mall signage, and consumer-facing documents, and they

"target[] the same general audience." *CAE*, 267 F.3d at 681-82; *see also Forum Corp. of N. Am.*,

903 F.2d at 442 (reversing district court's determination in defendant's favor when evidence

showed marketing channels, methods, and audiences overlapped).

If this were not enough, Defendants opened their stores in the exact same shopping malls

where AEO had for years operated AMERICAN EAGLE OUTFITTERS stores and other

AMERICAN EAGLE sub-brands. Grover Decl. ¶¶ 27-29; Hooker Decl. Ex. 11 (Defs. Resp. to

RTA ¶¶ 36-38). Likelihood of confusion increases when the parties' marks are used in the same

channels of trade and geographic area. *CAE*, 267 F.3d at 681-82; *Miyano Mach.*, 576 F. Supp. 2d

at 885 (likelihood of confusion where parties operated in same channels of trade and geographic

area); *Perfumania, Inc. v. Perfulandia, Inc.*, 279 F. Supp. 2d 86, 100 (D.P.R. 2003) (parties'

trade channels identical where both operated retail stores in malls and shopping centers); *Edison

Bros. Stores, Inc. v. Nat'l Dev. Grp., Inc.*, No. 89-0612-Z, 1992 WL 55465, at *3 (D. Mass.

March 6, 1992) (fact that parties' retail stores appeared in same shopping malls weighed in favor

of likely confusion). Accordingly, the "area and manner of concurrent use" favors AEO.

### 5.    Defendants Offer Identical Retail Services And Overlapping Goods

Defendants use the AMERICAN EAGLE FURNITURE mark for retail stores, just as

AEO uses the AMERICAN EAGLE and AMERICAN EAGLE OUTFITTERS marks for retail

stores. Using a similar mark for the same services weighs heavily in favor of likelihood of

confusion. *Tisch Hotels*, 350 F.2d at 613-14.

The parties also use their respective marks on overlapping or related products, which

weighs heavily in favor of likelihood of confusion. "[A] closely related product is one which

24

would reasonably be thought by the buying public to come from the same source, or thought to be affiliated with, connected with, or sponsored by the trademark owner." *Miyano Mach.*, 576 F. Supp. 2d at 884 (internal quotations omitted); *see also Int'l Kennel Club of Chi.*, 846 F.2d at 1089 (holding that a likelihood of confusion existed when the products were not identical but were sufficiently related to create an inference in consumers' minds that the products came from the same source); *Sign of the Beefeater*, 540 F.2d at 276-77 (gin distiller successfully enjoined restaurateur from using similar mark).[7]

"[T]he diverse nature of [a plaintiff's] business [makes] it likely that consumers might reasonably expect [plaintiff] to expand its business to offer the same products and services offered by [defendant]." *CAE*, 267 F.3d at 678. The parties' products are considered related or to overlap when it is reasonable to expect that a mark owner may "enter [defendant's] product market[] in which [plaintiff] does not now trade but into which it might reasonably be expected to expand in the future." *Id.* (quoting *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 958 (7th Cir. 1992)). This is especially true when a plaintiff has historically offered the same products as defendant. *CAE*, 267 F.3d at 681.

Here, the products the parties sell in their retail stores plainly overlap. Defendants sell furniture for use in the home, including chairs, sofas, ottomans, tables, rugs and the like. T. Aboussaf Dep. 43:21-46:9. Defendants admit AEO has used the AMERICAN EAGLE Marks for like products, including chairs, stools, lamps, rugs, indoor lighting, floor cushions, pillows, magazine racks, memory boards, blankets, throws, picture frames, laundry baskets, candles, window curtains, and wall clocks. Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 77-78).

---

[7] This Circuit has "specifically noted that a plaintiff need not demonstrate that it is in direct competition with an alleged infringer in order to establish likelihood of confusion." *Int'l Kennel Club of Chicago*, 846 F.2d at 1089 (citing *Sign of the Beefeater*, 540 F.2d at 275).

Defendants further admit that a host of apparel and lifestyle brand retailers—including Anthropologie, Cabela's, Eddie Bauer, Lands' End, Lily Pulitzer, L.L. Bean, Ralph Lauren, Urban Outfitters, Brooks Brothers, Calvin Klein, Lacoste, and Tommy Hilfiger—have expanded from apparel into furniture and home furnishings. *Id.* (¶¶ 82-105); Grover Decl. ¶ 23. For this reason as well, consumers would reasonably expect the parties' products and services to come from a single source. *CAE*, 267 F.3d at 681; *Int'l Kennel Club of Chi.*, 846 F.2d at 1089. As a result, this factor weighs heavily in AEO's favor.

### 6.    Consumers Shopping For Defendants' Relatively Low Priced Furniture Are Likely To Exercise A Low Degree Of Care With Respect To Branding

"The more widely accessible and inexpensive the products and services, the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *CAE*, 267 F.3d at 683. Similarly, "where the parties have a broad range of customers, the 'standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class.'" *Pure Imagination*, 2004 WL 2967446, at *7 (quoting *Trans Union LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001)).

Both parties market their products to shoppers in suburban malls. Grover Decl. ¶ 8; Hooker Decl. Ex. 8 (Kubinski Dep. 29:4-8, 43:2-15), Ex. 3 (T. Aboussaf Dep. 114:4-8; 198:20-199:1). Both parties also sell affordable products; AEO's products generally range in price from a few dollars to $150 (Grover Decl. ¶ 7) and Defendants' retail furniture is offered "at a modest price," ranging from $49 to $1299 (Hooker Decl. Ex. 3 (T Aboussaf Dep. Ex. 20) (The higher prices for Defendants' products are for multi-piece furniture sets.)) Thus, the degree of care exercised by "the least sophisticated consumer in the class" is likely to be relatively low, and the amount of actual confusion evidence that has come to light supports that conclusion. *Pure*

26

*Imagination*, 2004 WL 2967446, at *7; *Lettuce Entertain You Enters.*, 703 F. Supp. 2d at 787-88 (low degree of sophistication and care for the parties' restaurant services, even though some of plaintiff's restaurants offered fine dining and expensive menu selections).

Further, even the most sophisticated consumers may experience initial-interest confusion.[8] *Computer Care v. Serv. Sys. Enter., Inc.*, 982 F.2d 1063, 1070 (7th Cir. 1992) (consumers' sophistication does not foreclose confusion); *Promatek Indus., Ltd v. Equitrac Corp.*, 300 F.3d 808, 812-13 (7th Cir. 2002) (granting preliminary injunction on basis of initial-interest confusion, stating "[c]ustomers believing they are entering the first store rather than the second are still likely to mill around before they leave."). This is particularly likely here, given the number of traditional apparel companies that now offer furniture and home goods (Grover Decl. ¶ 23; Hooker Decl. Ex. 11 (¶¶ 82-105)). *See CAE*, 267 F.3d at 683 (convergence of parties' product offerings into similar markets heightens risk that otherwise sophisticated consumers will mistakenly associate the parties' products). The fact that a consumer may only "briefly confused is of little or no consequence." *Promatek Indus., Ltd*, 300 F.3d at 812-13.

### 7. Defendants' Have Acted In Bad Faith By Targeting AEO's Retail Venues And Willfully Ignoring AEO's Demand Letters

While evidence of intent is not required, an inference of confusion is readily drawn when a defendant adopted its mark with the intent to trade on the trademark owner's good will. *See Tisch Hotels*, 350 F.2d at 614; *see also Eli Lilly*, 233 F.3d at 463 (the fact that a party intended to cause confusion increases the likelihood that the party successfully achieved its objective). Defendants had actual knowledge of AEO when they expanded their use; not only did they open their stores in malls where AEO already was doing business, but AEO's marks were cited by the

---

[8] Indeed, this is the case here. The declaration submitted by Mark Stalter reflects that, even though he is a retail manager at Value City Furniture, he was initially confused. Hooker Decl. Ex. 25.

PTO against Defendants' application to register the AEF Design Mark years before, and Defendant AEF acknowledged in its response that AEO "is a well know[n] shopping mall clothing store . . . ." *See* Hooker Decl. ¶ 34. The fact that Defendants elected not to employ their AEF Design Mark and instead presented their word mark in solid caps and fonts so similar to AEO's presentation further supports an inference of bad faith. Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 43-45), Ex. 10 (Answer ¶ 20).

Defendants also had actual notice of AEO's objections because they received (and ignored) AEO's multiple letters. *Id.* (¶¶ 50-52), Ex. 11 (Defs. Resp. to RTA ¶¶ 68-70), Ex. 3 (T. Aboussaf Dep. 157:23-158:14, 159:20-163:22). They observed (and ignored) instances of actual confusion. Answer ¶ 49; Defs. Resp. to RTA ¶¶ 75-76. And they continued their infringing activities even after AEO filed this lawsuit. Such actions epitomize bad faith.[9]

*          *          *

Each of the likelihood-of-confusion factors weigh heavily in AEO's favor. This Court, therefore, should grant summary judgment on AEO's First, Second, Sixth, and Seventh Claims for Relief for federal and state trademark infringement and unfair competition.

## II.  THE AEF DESIGN MARK REGISTRATION SHOULD BE CANCELLED BECAUSE AEF HAS NEVER USED IT FOR "WHOLESALE STORES" AND IT WAS FRAUDULENTLY OBTAINED

This Court has the authority to, and should, cancel Defendant AEF's Registration No. 3,428,434 because it (a) has never been used by AEF for "wholesale stores" and (b) was obtained

---

[9] AEO recognizes that intent frequently raises fact issues because defendants invariably deny bad faith. However, as proof of intent is not necessary to establish trademark infringement, this factor, even if disputed, should not prevent the entry of summary judgment. For example, in affirming summary judgment in the trademark owner's favor, the Seventh Circuit in *CAE* held the intent factor "irrelevant" and "not necessary to prove trademark infringement." 267 F.3d at 686. Similarly, in *Ty* the Seventh Circuit held "[t]here is no hard and fast requirement that all three of the most significant factors must weigh in a plaintiff's favor for that particular party to prevail . . . ." 237 F.3d at 902 (affirming preliminary injunction granted in plaintiff's favor). *See also Sands, Taylor & Wood*, 978 F.2d at 961 (same).

fraudulently. *See* 15 U.S.C. §§ 1119, 1064(1); 3 *McCarthy* § 17:21 (non-use of a mark for the registered goods or services is grounds for cancellation); 6 *McCarthy* § 31:30 (registrations fraudulently obtained are subject to cancellation).

**A.     Defendants Never Have Used The AEF Design Mark For "Wholesale Stores"**

The fact that AEF never has used the AEF Design Mark for "wholesale stores" is, without more, basis for cancellation. An application to register a service mark depends upon on use of the applied-for mark for the specified service in interstate commerce. *See* 15 U.S.C. §§ 1051(a), 1053. "The registration of a mark that does not meet the use requirement is void *ab initio*." *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009). A mark is used in conjunction with *services* 'when it is used or displayed in the sale or advertising of services'"; and "a mark is used in commerce on *goods* when 'it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto.'"*Miyano Mach.*, 576 F. Supp. 2d at 881 (quoting 15 U.S.C. § 1127) (emphases added)).

Defendant AEF applied to register the AEF Design Mark as a service mark in International Class 35 (for services) and stated the mark was used for ***wholesale stores*** featuring furniture. Hooker Decl. Exs. 32, 34, 38 (emphasis added). However, AEF's 30(b)(6) witness, Tamman Aboussaf, testified that the only "wholesale store" AEF purportedly operates is not really a store but the Titanic warehouse, and neither the registered AEF Design Mark nor the word mark AMERICAN EAGLE FURNITURE has been used as signage for Defendant's wholesale warehouse. *Id.* Ex. 4 (O. Aboussaf Dep. at 9:17-25, 29:22-30:23), Ex. 3 (T. Aboussaf Dep. at 105:14-106:22). As is plain from reviewing Defendants' wholesale catalog, website, and documents, Defendants conduct their wholesale operations under the name TITANIC FURNITURE. *Id.* Ex. 11 (Defs. Resp. to RTA ¶¶ 49), Ex. 3 (T. Aboussaf Dep. at 23:10-22,

29

58:11-19), Ex. 31. When asked at his deposition "[h]as American Eagle Furniture ever operated

a wholesale store, Mr. Oudei Aboussaf, AEF's Vice President, stated "I'm not sure you can

operate a wholesale store . . . . American Eagle Furniture is not considered a wholesale store, it is

a retail operation." *Id.* Ex. 4 (O. Aboussaf Dep. at 29:22-30:22). Mr. Tamman Aboussaf

explained Defendants' rationale for keeping separate Titanic Furniture's wholesale operations

and the retail operations run under AMERICAN EAGLE FURNITURE:

> Q.  Is there a reason why you don't use American Eagle Furniture in connection with your wholesale operation?
> A.  I'm sorry?
> Q.  You use Titanic, right --
> A.  Correct.
> Q.  -- for the wholesale sales?
> A.  As a company, right.
> Q.  Why don't you use American Eagle Furniture for the wholesale operation?
> A.  I like to separate between wholesale and retail just as a separate thing. But there's no --We could really do it, but we just choose not to.

*Id.* Ex. 3 (T. Aboussaf Dep. 148:8-149:8). Despite document requests for exemplars of all uses of

the mark, Defendants produced none evidencing use of the AEF Design Mark for a wholesale

store. Hooker Decl. Ex. 1. The record is clear that AEF does not use, and has never used, the

AEF Design Mark for the services recited in its application.

Defendants may claim use of the AEF Design Mark on wholesale products, packaging,

invoices, stationery, or business cards. *Id.* (105:22–106:9). But AEF's Vice President, Oudei

Aboussaf testified that Titanic does not have any preprinted stationery for correspondence with

customers and that Titanic's invoices say TITANIC FURNITURE, not AMERICAN EAGLE

FURNITURE. *Id.* Ex. 4 (O. Aboussaf Dep. at 56:13-14, 56:15-57:2). Defendants have not

produced any business cards showing such use for wholesale stores and, even if they had,

handing out a few business cards "is not a bona fide use in commerce." *Specht v. Google, Inc.*,

758 F. Supp. 2d 570, 579 (N.D. Ill. 2010).

30

Nor is use on products or product packaging sufficient to demonstrate service mark use for "wholesale stores." *See*, *e.g.*, *In re Marion L. Lonegro*, No. 76/695,362, 2010 WL 1720589, at *4 (T.T.A.B. Apr. 12, 2010) (specimen displaying use on packaging rejected as insufficient to show use for services); *In re Monograms Am. Inc.*, No. 75/089,735, 51 U.S.P.Q.2d 1317, 1318 (T.T.A.B. Feb. 12, 1999) ("In view of the inherent intangible nature of services, specimens which evidence service mark use cannot be labels or tags as are used for trademarks . . . ."); *Intermed Commc'ns. Inc. v. Chaney*, 197 U.S.P.Q. 501, 507 (T.T.A.B. 1977) ("A specimen which shows an alleged mark but which makes no reference to the services offered or performed thereunder is not evidence of service mark use.").[10]

"[G]iven the near total dearth of documentary evidence supporting [Defendants'] contentions of mark usage," the registration should be cancelled. *Cent. Mfg. Co. v. Brett*, 78 U.S.P.Q.2d 1662, 1669 (N.D. Ill. 2005).

**B.** **Defendant American Eagle Furniture Knowingly Made False And Misleading Statements To The USPTO To Secure Its Registration**

Defendant AEF's fraudulent misrepresentations to the USPTO constitute a second, independent basis for cancelling its registration. A registration should be cancelled if the undisputed facts show "(1) that [Defendant] made a false factual representation to the PTO; (2) that the misrepresentation was material to the validity of the registration; and (3) that the misrepresentation was made with fraudulent intent." *WMH Tool Grp., Inc. v. Woodstock Int'l, Inc.*, No. 07-CV-3885, 2009 WL 6825247, at *7 (N.D. Ill. 2009) (citing *Zip Dee, Inc. v. Domestic Corp.*, 900 F. Supp. 1004, 1009 (N.D. Ill. 1995)).

Defendant AEF misrepresented to the PTO that (a) the AEF Design Mark was being used

---

[10] *See also In re wTe Corp.*, 87 U.S.P.Q.2d 1536 (T.T.A.B. 2008) (specimen comprising a packaging label affixed to boxes being mailed to customers, on which the SPECTRAMET mark was used on a return address found unacceptable because it did not show a connection between the mark and the recited contract processing of metals).

for "wholesale stores" (for the reasons discussed above) and (b) that "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive . . . ." Hooker Decl. Ex. 32. AEF was well aware that it was not using the AEF Design Mark for wholesale stores, and that the American Eagle Furniture Corp. in Elizabeth, New Jersey was already using the mark AMERICAN EAGLE FURNITURE for its wholesale furniture services at the time AEF selected its mark. *Id.* Ex. 3 (T. Aboussaf Dep. 132:4 – 135:4), Ex. 4 (O. Aboussaf Dep. 43:2-44:13), Ex. 11 (Defs. Resp. to RTA ¶¶ 55(a)-(c), 56).

A misrepresentation is material if the "registration should not have issued if the truth were known to the examiner." *Zip Dee*, 900 F. Supp. at 1010. Had the examining attorney known that AEF was not using its mark, or that another entity held prior rights to a mark incorporating the exact term AMERICAN EAGLE FURNITURE for identical services, Defendant AEF's registration would not have issued. Defendant's misrepresentations were therefore material.

Fraudulent intent is present when a registrant knowingly made the false, material misrepresentations with the intent to deceive the PTO or knowingly withheld information. *Gaffrig Performance Indus. v. Livorsi Marine, Inc.*, Nos. 99 C 7778, 99 C 7822, 2003 WL 23144859, at *14 (N.D. Ill. Dec. 22, 2003). Here, Defendant knowingly withheld the fact that its mark was not in use and that a third party furniture wholesaler with which it did business held prior rights in AMERICAN EAGLE FURNITURE. For these reasons, Registration No. 3,428,434 should be cancelled because it was fraudulently obtained. 15 U.S.C. §§ 1119, 1064(1).

## III. DEFENDANTS' AFFIRMATIVE DEFENSES SHOULD BE REJECTED

Defendants have asserted two affirmative defenses: laches and genericness. Even if the Court does not grant the other relief AEO seeks in this motion, the Court should strike these unmeritorious defenses to streamline the case for trial.

### A. Defendants Cannot Establish Laches Because They Progressively Encroached, AEO Did Not Unreasonably Delay, And Defendants Cannot Show Prejudice

For laches to apply "the plaintiff must (1) know of the infringing use of the service mark by the defendant, (2) exercise an inexcusable delay in bringing the lawsuit and (3) the Defendant must be unduly prejudiced as a result." *La Zaza Trattoria, Inc. v. Lo Bue*, No. 12 C 135, 2012 WL 3308846, at *4 (N.D. Ill. Aug. 10, 2012) "[L]aches will not bar injunctive relief where a defendant adopted the trade name with knowledge of a plaintiff's rights in the trade name." *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 955 (N.D. Ill. 2002) (internal citations and quotation marks omitted).

In assessing laches, the Seventh Circuit has adopted the doctrine of "progressive encroachment." *Indep. Nail & Packing Co. v. Stronghold Screw Prods., Inc.*, 205 F.2d 921, 927 (7th Cir. 1953) ("Defendant's course was progressive encroachment and such a course does not tend to arouse hostile action until it is fully developed"). This doctrine "allows a trademark owner to tolerate *de minimis* or low-level infringements and still have the right to act promptly when a junior user either gradually edges into causing serious harm or suddenly expands or changes its mark." *AM Gen. Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 823 (7th Cir. 2002) (internal quotation and citation omitted).[11] Here, Defendants cannot show that AEO delayed in

---

[11] *See also* 6 *McCarthy* § 31:20 ("Under [this] doctrine…a trademark owner is not forced by the rule of laches to sue until the likelihood of confusion caused by the accused use presents a significant danger to the mark. . . [U]se of a similar mark in a different product or service line or in a different territory does not necessarily trigger an obligation to immediately file suit.").

taking action once Defendants adopted the AMERICAN EAGLE FURNITURE word mark and expanded their use into more directly competitive channels. Nor can Defendants demonstrate "that the plaintiff's unreasonable delay caused material prejudice" to them. *Nature Conservancy v. Wilder Corp. of Del.*, 656 F.3d 646, 649-651 (7th Cir. 2011) Defendants' laches defense, therefore, fails as a matter of law.

### B.    AEO's Well-Known AMERICAN EAGLE Marks Are Not Generic

Defendants assert as an affirmative defense that the AMERICAN EAGLE Marks are "generic." Hooker Decl. Ex. 10 (Answer at p. 36). "A generic term is one that refers to the genus of which the particular product is a species." *Park 'N Fly*, 469 U.S. at 194. "A mark is 'generic' when it has become the name of a product (e.g., 'sandwich' for meat between slices of bread) or class of products (thus 'church' is generic)." *TE-TA-MA Truth Found.--Family of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 666 (7th Cir. 2002) (holding "Church of the Creator" was not generic). The AMERICAN EAGLE Marks are not common dictionary words for the goods or services AEO offers. Moreover, "a plaintiff with a trademark registered in accordance with the Lanham Act is entitled to [the] presumption[] . . . that the plaintiff's registered trademark is not . . . generic . . . . The defendant may overcome this presumption with proof of . . . genericness, but the burden is on the defendant to make such a showing." *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 776 (N.D. Ill. 2011) (internal citations omitted). Having admitted that AEO's registered marks are valid, enforceable and in full force and effect, and in several instances incontestable, Defendants cannot possibly prove that AEO's marks are generic: when a mark is valid, it cannot be generic. Hooker Decl. Ex. 11 (Defs. Resp. to RTA ¶¶ 1-23), Ex. 10 (Answer ¶¶ 29, 30, 31); 2 *McCarthy* § 12:1 ("[A]a generic term is 'the name of the product or service itself - what [the product] is, and as such . . . the very antithesis of a mark.").

34

## IV.    INJUNCTIVE RELIEF IS PROPER

The Lanham Act expressly authorizes the Court to grant an injunction "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a) . . . of section 1125." 15 U.S.C. § 1116; *see also* 15 U.S.C. § 1114(1). "[A] showing of likelihood of confusion alone will suffice to support a grant of injunctive relief. " *Schutt Mfg. Co. v. Ridell*, 673 F.2d 202, 207 (7th Cir. 1982). When trademark infringement is established, irreparable harm is presumed "because it is nearly impossible to calculate the precise economic harm caused by damage to goodwill and reputation on account of such infringement." *Miyano Mach.*, 576 F. Supp. 2d at 887. In any case, AEO has established irreparable harm to its reputation and good will because it has no control over Defendants' products and services and they differ in quality from those AEO offers. Accordingly, if the Court grants summary judgment on the issue of Defendants' liability, it should also enjoin their future use of the infringing marks, which would leave only the issue of monetary relief for trial.

## CONCLUSION

On the largely stipulated record before the Court, summary judgment should be entered against Defendants on their liability for trademark infringement and unfair competition as alleged in AEO's First, Second, Sixth, and Seventh Claims for Relief; enjoining Defendants' use of the AMERICAN EAGLE FURNITURE and AMERICAN EAGLE marks; and cancelling Defendant AEF's registered trademark for the AEF Design Mark as alleged in AEO's Fourth Claim for Relief; and striking Defendants' affirmative defenses.


DATED:        October 1, 2012

Respectfully Submitted,

By: */s/ Charles H. Hooker III*

Debra R. Bernard
Jeremy L. Buxbaum
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
(312) 324-8400
(312) 324-9400

Lisa Pearson (LP 4916)
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas
New York, New York 10036-7703
lpearson@kilpatricktownsend.com
(212) 775-8700
(212) 775-8800

Charles H. Hooker III (GA 375622)
1100 Peachtree Street, N.E., Suite 2800
Atlanta, Georgia 30309-4530
chooker@kilpatricktownsend.com
(404) 815-6500
(404) 815-6555

*Attorneys for Plaintiffs*

36

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing PLAINTIFFS' MEMORANDUM IN SUPPORT OF

SUMMARY JUDGMENT has been served upon the following counsel via the Court's ECF

filing system:

> Kenneth M. Sullivan
> Dennis F. Esford
> Tressler LLP
> 233 S. Wacker Drive
> 22nd Floor
> Chicago, IL 60606
> KSullivan@tresslerllp.com
> DEsford@tresslerllp.com

DATED:   October 1, 2012

*/s/ Charles H. Hooker III*