**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| AMERICAN EAGLE OUTFITTERS, INC. and RETAIL ROYALTY COMPANY<br><br>    Plaintiffs,<br><br>        v.<br><br>AMERICAN EAGLE FURNITURE, INC., d/b/a TITANIC FURNITURE; WOODFIELD FURNITURE, INC.; GURNEE MILLS FURNITURE, INC.; TONY ARCHUILITI, JAY NOURI, TAMMAN ABOUSSAF, OUDIE ABOUSSAF, and HOUSSAM ALCHRITI, individually and doing business as AMERICAN EAGLE FURNITURE and TITANIC FURNITURE,<br><br>    Defendants. | Civil Action No. 1:11−CV−02242<br><br>Judge Edmond E. Chang |

**PLAINTIFFS' COMBINED REPLY MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT ON THE ISSUES OF DEFENDANTS'
LIABILITY FOR TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION,
CANCELLATION OF TRADEMARK REGISTRATION NO. 3,428,434, AND
DEFENDANTS' AFFIRMATIVE DEFENSES, AND MEMORANDUM IN OPPOSITION
TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Lisa Pearson
Charles H. Hooker III
KILPATRICK TOWNSEND & STOCKTON LLP
The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
212.775.8700

Debra R. Bernard
Jeremy L. Buxbaum, Ph.D.
PERKINS COIE LLP
131 South Dearborn Street
Suite 1700
Chicago, Illinois 60603-5559
312.324.8400

December 3, 2012

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ...............................................................................................................1

I.     BECAUSE DEFENDANTS FAIL TO RAISE ANY GENUINE ISSUE OF
MATERIAL FACT, AEO'S MOTION SHOULD BE GRANTED ...................................1

     A.     Defendants Do Not Refute The Facts Establishing Their Liability for
Trademark Infringement And Unfair Competition....................................1

          1.     The Actual Confusion Evidence Is Both Admissible And
Overwhelming.................................................................2

               a.     AEO's Actual Confusion Declarations Are Admissible.................2

               b.     Even A Few Instances of Actual Confusion Are Probative
Of A Likelihood Of Confusion .......................................3

          2.     The Remaining Likelihood of Confusion Factors All Weigh
Heavily Against Defendants .......................................................4

     B.     Defendants Do Not Dispute Any Fact Or Legal Principle Supporting
AEO's Cancellation Claim .....................................................9

     C.     Defendants' Laches Defense Should Be Dismissed ...............................10

     D.     Defendants' Admissions That The AMERICAN EAGLE Marks Are Valid
Eviscerate Their Genericness Defense................................................12

II.    DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE DENIED...........12

     A.     The Record Contains Ample Evidence To Establish The Fame Of The
AMERICAN EAGLE OUTFITTERS Mark ..........................................12

          1.     A Survey Is Not Required And Ample Proof Establishes Pervasive
Recognition Of The AMERICAN EAGLE OUTFITTERS Mark ...........13

          2.     The Percentage of The Public that Recognizes The AMERICAN
EAGLE OUTFITTERS Mark Is Not Limited To AEO's Target
Consumer .......................................................................14

CONCLUSION..........................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*adidas Am. Inc. v. Payless Shoesource, Inc.*,
   529 F. Supp. 2d 1215 (D. Or. 2007) ............................................................... 13

*Am. Orthodontics Corp. v. Am. Hosp. Supply Corp.*,
   531 F. Supp. 247 (N.D. Ill. 1981) ................................................................... 2

*Ameripay LLC v. Ameripay Payroll, Ltd.*,
   04 C 5253, 2005 U.S. Dist. LEXIS 20453 (E.D. Ill. Sept. 15, 2005) ................... 11

*Armco, Inc. v. Armco Burglar Alarm Co.*,
   693 F.2d 1155 (5th Cir. 1982) ....................................................................... 3

*Aycock Eng'g, Inc. v. Airflite, Inc.*,
   560 F.3d 1350 (Fed. Cir. 2009) ..................................................................... 9

*Bank Leumi Le-Israel, B.M v. Lee*,
   928 F.2d 232 (7th Cir. 1991) ......................................................................... 9

*Board of Regents, the University of Texas System v. KST Electric, Ltd.*,
   550 F. Supp. 2d 657 (W.D. Tex. 2008) ........................................................... 15

*Burberry Ltd. v. Euro Moda, Inc.*,
   No. 08 Civ. 5781, 2009 WL 1675080 (S.D.N.Y. June 10, 2009) ....................... 14, 15

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*,
   78 F.3d 1111 (6th Cir. 1996) ......................................................................... 5

*Chattanooga Mfg., Inc. v. Nike, Inc.*,
   301 F.3d 789 (7th Cir. 2002) ......................................................................... 11

*Computer Network Corp. v. Compmail Sys., Inc.*,
   No. 84 C 6813, 1985 WL 2218 (N.D. Ill. July 10, 1985 ................................... 9

*Dallas Cowboys Football Club, Ltd. v. America's Team Prop., Inc.*,
   616 F. Supp. 2d 622 (N.D. Tex. 2009) ........................................................... 15

*Dan-Foam A/S v. Brand Named Beds, LLC*,
   500 F. Supp. 2d 296 (S.D.N.Y. 2007) ............................................................ 13

*Eclipse Assocs. Ltd. v. Data Gen. Corp.*,
   894 F.2d 1114 (9th Cir. 1990) ....................................................................... 11

*Eli Lilly & Co. v. Natural Answers, Inc.*,
   86 F. Supp. 2d 834 (S.D. Ind. 2000), *aff'd*, 233 F.3d 456 (7th Cir. 2000) ............. 13

*Facebook, Inc. v. Teachbook.com LLC*,
   819 F. Supp. 2d 764 (N.D. Ill. 2011) ............................................................. 12

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
   111 F.3d 993 (2d Cir. 1997) .......................................................................... 3

*Helene Curtis Indus., Inc. v. Church & Dwight Co.*,
    560 F.2d 1325 (7th Cir. 1977) ............................................................................ 2

*Hot Wax, Inc. v. Turtle Wax, Inc.*,
    191 F.3d 813 (7th Cir. 1999) ............................................................................ 11

*Imperial Serv. Sys., Inc. v. ISS Int'l Serv. Sys., Inc.*,
    701 F. Supp. 655 (N.D. Ill. 1988) ...................................................................... 2

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd Partnership*,
    34 F.3d 410 (7th Cir. 1994) .............................................................................. 4

*International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*,
    846 F.2d 1079 (7th Cir. 1988) ...................................................................... 3, 4

*James Burrough Ltd. v. Sign of Beefeater, Inc.*,
    540 F.2d 266 (7th Cir. 1976) ............................................................................ 5

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*,
    188 F.3d 427 (7th Cir. 1999) ........................................................................... 12

*Johnson & Johnson v. Quality Pure Mfg, Inc.*,
    484 F. Supp. 975 (D. N.J. 1979) ....................................................................... 9

*Kos Pharm., Inc. v. Andrx Corp.*,
    369 F.3d 700 (3d Cir. 2004) ............................................................................. 3

*MCI Telecomm. Corp. v. Ameri-Tel, Inc.*,
    852 F. Supp. 659 (N.D. Ill. 1994) ..................................................................... 9

*Mile High Upholstery Fabric Co., Inc. v. Gen. Tire & Rubber Co., Inc.*,
    No. 83 C 3200, 1983 WL 51924 (N.D. Ill. Aug. 5, 1983) ................................. 2

*Morningside Grp. Ltd. v. Morningside Capital Grp., LLC.*,
    182 F.3d 133 (2d Cir. 1999) ........................................................................... 11

*Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*,
    No. 06-CV-140, 2008 WL 2991570 (D.N.J. July 28, 2008) ........................... 11

*New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ............................................................ 15

*Oriental Fin. Grp. Inc v Cooperativa de Ahorro y Crédito Oriental*,
    Nos. 11-1473, 11-1476, 2012 WL 5073529 (1st Cir. Oct. 18, 2012) ............. 10

*Pfizer Inc. v. Sachs*,
    652 F. Supp. 2d 512 (S.D.N.Y. 2009) ............................................................ 15

*Philip Morris Inc. v. Allen Dist., Inc.*,
    48 F. Supp. 2d 844 (S.D. Ind. 1999) ............................................................. 11

*Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*,
    149 F.3d 722 (7th Cir. 1998) ............................................................................ 4

*Scarves by Vera, Inc., v. Todo Imps., Ltd.*,
    544 F.2d 1167 (2d Cir. 1976) ......................................................................... 11

*Seven-Up Co. v. Green Mill Beverage Co.*,
  191 F. Supp. 32 (N.D. Ill. 1961) .......................................................................... 11

*Source Serv. Corp. v. Source Telecomputing Corp.*,
  635 F. Supp. 600 (N.D. Ill. 1986) .......................................................................... 2

*Tisch Hotels, Inc. v. Americana Inn, Inc.*,
  350 F.2d 609 (7th Cir. 1965) .................................................................. 3, 11, 12

*Ty, Inc. v. Jones Group, Inc.*,
  237 F.3d 891 (7th Cir. 2001) .................................................................................. 6

*World Carpets, Inc. v. Dick Littrells New World Carpets*,
  438 F.2d 482 (5th Cir. 1971) .................................................................................. 4

## Rules

Fed. R. Evid. 801(c) ....................................................................................................... 2

Fed. R. Evid. 803(1) ....................................................................................................... 2

Fed. R. Evid. 803(3) ....................................................................................................... 2

## Statutes

15 U.S.C. § 1125(c)(2)(A) ........................................................................................... 13

## Other Authorities

J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* (4th ed.
  2012) ................................................................................................................. 4,11, 13

R. Callmann, 4 *Callmann on Unfair Competition,*
  *Trademarks & Monopolies* § 23:29 (4th ed. 2012) .......................................... 11

*Restatement Third, Unfair Competition* § 23, cmt. b (1995) ................................. 4

iv

Plaintiffs American Eagle Outfitters, Inc. and Retail Royalty Company (collectively, "AEO") submit this memorandum in further support of their summary judgment motion and in opposition to Defendants' cross-motion.

## ARGUMENT

### I. BECAUSE DEFENDANTS FAIL TO RAISE ANY GENUINE ISSUE OF MATERIAL FACT, AEO'S MOTION SHOULD BE GRANTED

The parties do not dispute the summary judgment standard. As Defendants acknowledge:

Once the moving party has met the initial burden, the non-moving party must designate specific facts showing that there is a genuine issue for trial. . . . The non-moving party must support its contentions with admissible evidence and may not rest upon the mere allegations in the pleadings or conclusory statements in affidavits . . . . [N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts, is sufficient to defeat a motion for summary judgment.

(ECF No. 62 ("Def. Br.") at 3 (citations and internal quotation marks omitted)).

Defendants fail to introduce sufficient evidence to raise any genuine issues for trial on the issues of their liability for trademark infringement and unfair competition (Claims One, Two, Six and Seven in the Amended Complaint), cancelling Trademark Reg. No. 3,428,434 (Claim Four), and dismissing their laches and genericness defenses. Thus, AEO's motion should be granted.

### A. Defendants Do Not Refute The Facts Establishing Their Liability For Trademark Infringement And Unfair Competition

The elements of AEO's trademark infringement and unfair competition claims are undisputed. Defendants make no effort to refute AEO's strong showing that its AMERICAN EAGLE Marks are valid and enforceable, the first element (ECF No. 47 ("Pl. Br.") 7-8, 16-17). Rather, "Defendants confine their argument to the factors Courts use to determine whether a likelihood of confusion exists between Defendants and Plaintiffs' trademarks," the second element (Def. Br. 10). They then utterly fail to refute AEO's showing of likelihood of confusion.

### 1. The Actual Confusion Evidence Is Both Admissible and Overwhelming

While likelihood of confusion "can be proven without any evidence of actual confusion, such evidence, if available, is entitled to substantial weight." *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1330 (7th Cir. 1977) (internal citation omitted). Defendants' central attack on AEO's likelihood of confusion showing is that the seventeen declarations evincing well over 100 instances of actual confusion are inadmissible hearsay, or the instances are insignificant in number (Def. Br. 13-16). Both arguments fail as a matter of law.

### a. AEO's Actual Confusion Declarations Are Admissible

Defendants assert, without authority, that all of the actual confusion evidence is "classic hearsay and must be stricken" (*Id.* at 14). Defendants concede they stipulated to treat AEO's declarations "as in-court statements, which may be used by [AEO] in lieu of witness testimony at trial." (*Id.*) The only question, then, is whether the declarations contain any inadmissible second level hearsay. They do not. It is well-established that statements from out-of-court declarants expressing confusion are admissible to show likelihood of confusion because: (1) they are not offered for the truth of the matter asserted (FED. R. EVID. 801(c)) and fall within (2) the present sense impression (*id.* 803(1)) or (3) then-existing state of mind exceptions (*id.* 803(3)).[1]

In *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, for example, plaintiff's employees testified they received phone calls expressing "confusion as to the

---

[1] *E.g., Mile High Upholstery Fabric Co., Inc. v. Gen. Tire & Rubber Co., Inc.*, No. 83 C 3200, 1983 WL 51924, at *5 (N.D. Ill. Aug. 5, 1983) (admitting testimony that a caller telephoned plaintiff to ask about a line of wallpaper from defendant's product line "for plaintiff does not offer the caller's statement 'to prove the truth of the matter asserted'"); *Am. Orthodontics Corp. v. Am. Hosp. Supply Corp.*, 531 F. Supp. 247, 250 (N.D. Ill. 1981) (admitting actual confusion evidence pursuant to present sense impression and state of mind exceptions); *Source Servs. Corp. v. Source Telecomputing Corp.*, 635 F. Supp. 600, 612 (N.D. Ill. 1986) (admitting affidavits from plaintiff's employees stating they received phone calls from individuals believing plaintiff offered defendant's data base service because such statements evinced callers' then existing state of mind); *Imperial Serv. Sys., Inc. v. ISS Int'l Serv. Sys., Inc.*, 701 F. Supp. 655, 659 (N.D. Ill. 1988) (admitting employee affidavits recounting conversations with individuals confused as to the parties' identities pursuant to Rule 803(3)).

plaintiff's relationship to the defendant[] . . . ." 846 F.2d 1079, 1090 (7th Cir. 1988). The Seventh Circuit overruled defendant's hearsay objections and "agree[d] with the plaintiff's argument that the letters, phone calls, and inquiries received by the plaintiff, as well as the testimony of plaintiff's employees, constitute probative evidence of a likelihood of confusion." *Id.* This ruling is fully consistent with the law of other Circuits.[2]

AEO's declarations reporting consumer statements (a) are not offered for the truth of their content, (b) capture consumers' present sense impressions, and (c) provide their then-existing state of mind. For example, AEO does not proffer the statement "we saw your brand's furniture store in the mall, too" (ECF No. 55 ("Hooker Decl.") Ex. 22 (Vogel Decl. ¶ 8)) for its truth but rather to show the shopper's (mistaken) present sense impression and then-existing state of mind. The same is true for the other actual confusion statements and questions, such as: "I didn't know American Eagle had furniture stores" (*id.* Ex. 25 (Stalter Decl. ¶ 3)); and a woman "asked me whether she could use her AEO rewards coupon at American Eagle Furniture" (*id.* Ex. 15 (Bowman Decl. ¶ 6)). In short, the extensive evidence of actual confusion is unquestionably admissible—and, as set forth at Pl. Br. 22-23 and below, highly probative.

> **b.    Even A Few Instances Of Actual Confusion Are Probative Of A Likelihood of Confusion**

Because "evidence of actual confusion is difficult to obtain in trademark and unfair competition cases, any such evidence is substantial evidence of likelihood of confusion." *Tisch Hotels, Inc. v. Americana Inn, Inc.,* 350 F.2d 609, 612 (7th Cir. 1965). Indeed,

> "[t]here can be no more positive or substantial proof of the likelihood of confusion than proof of actual confusion. Moreover, reason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, an almost overwhelming amount of proof would be necessary to refute such proof."

---

[2] *E.g., Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 719 (3d Cir. 2004); *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.,* 111 F.3d 993, 1003 (2d Cir. 1997); *Armco, Inc. v. Armco Burglar Alarm Co.,* 693 F.2d 1155, 1160 n.10 (5th Cir. 1982).

*Int'l Kennel*, 846 F.2d at 1089 (quoting *World Carpets, Inc. v. Dick Littrells New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971)); *see also* Pl. Br. 22-23 (collecting cases). As explained in the *Restatement (Third) Of Unfair Competition* § 23 cmt. b (1995), the existence of any actual confusion "is direct evidence that in the market context of their actual use the similarities of the two designations are sufficient to create confusion."

Defendants ignore all of the actual confusion precedents. Instead, they concoct an unscientific "statistic" purporting to show that .00797% of AEO shoppers are actually confused (Def. Br. 15). Setting aside the flawed assumptions in Defendants' calculation—*e.g.*, nothing in the record suggests that all confused shoppers reported their confusion, that the proper universe is limited to AEO shoppers, or that AEO's customers are dispersed equally among AEO's stores nationally—Defendants offer absolutely no authority for their approach.[3]

Evidence of actual confusion is "almost impossible to secure" because "confusion often go[es] unreported or unrecorded." 4 *McCarthy* § 23:12. Thus, courts routinely give substantial weight even to isolated instances of confusion (*see* Pl. Br. 22-23). Even discounting the misdirected deliveries Defendants question (Def. Br. 15 n.2), the record reflects over 100 instances of actual confusion, which is staggering relative to a typical trademark case.

### 2. The Remaining Likelihood Of Confusion Factors All Weigh Heavily Against Defendants

Defendants' scattershot discussion of the other confusion factors similarly misses the mark. According to Defendants, "AEO wants this Court to believe that the average consumer is confused between a retailer selling rooms full of furniture versus a clothing retail[er] that once

---

[3] *Platinum Home Mortgage Corp. v. Platinum Financial Group, Inc.*, 149 F.3d 722, 729 (7th Cir. 1998) (Def. Br. 16), merely held an invalid mark is not entitled to protection, regardless of any actual confusion. *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd Partnership*, 34 F.3d 410, 416 (7th Cir. 1994), also cited by Defendants, affirmed a preliminary injunction against a trademark infringer, crediting "evidence in the record that the defendants' use of the name 'Baltimore CFL Colts' whether for the team or on merchandise was likely to confuse a substantial number of consumers."

sold 'blow up' furniture and inexpensive small apartment accessories" (Def. Br. 12). It is not

AEO's contention that consumers believe AMERICAN EAGLE FURNITURE stores are

AMERICAN EAGLE OUTFITTERS apparel and accessories stores, but rather that consumers

believe AEO, like so many other apparel retailers, has expanded into retail furniture (Pl. Br. 25-

26, 27). This is why so many consumers have made statements to AEO employees concerning

where "your furniture store is located in the mall." Hooker Decl. Ex. 26 (Nelson Decl. ¶ 5); *see*

*generally id*. Exs. 12-28. Such confusion as to affiliation or sponsorship establishes Defendants'

liability as a matter of law. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 687 (7th Cir. 2001).

Defendants' cursory analysis of the remaining factors is addressed below.

 **<u>The strength of the AMERICAN EAGLE Marks</u>** (Pl. Br. 19-20). As summarized in the

Supplemental Declaration of Charles Hooker, submitted herewith, there are literally reams of

record evidence demonstrating the strength of AEO's AMERICAN EAGLE Marks. Without

citing any authority, Defendants maintain "the strength of the mark vis-à-vis potential customers

of Plaintiffs and Defendants is irrelevant to the infringement analysis" because the parties target

different age groups (Def. Br. 13). As a matter of undisputed fact, however, both parties rely on

foot traffic in the very same malls, the age ranges of their customers substantially overlap, and

recognition of the AMERICAN EAGLE Marks is not limited to AEO's target customers.[4]

 "The stronger the mark, the more likely it is that encroachment on it will produce

confusion." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1117

---

[4] *Compare* Hooker Decl. Ex. 3 (T. Aboussaf Dep. 198:23-23 ("We rely on the traffic in the mall.")) *with id.* Ex. 8 (Kubinski Dep. 29:4-8 (AEO uses its "store[s] as the primary platform for marketing to our consumer, from window display and promotional messaging to interior display, product presentation, and marketing.")); Grover Decl. ¶¶ 8, 11 ("[O]f the members whose ages we know, more than 44% of the membership of AEO's AERewards customer loyalty program is over the age of 25 and more than 32% is over the age of 30."); Hooker Decl. Ex. 8 (Kubinski Dep. 30:8-12, 44:2-13); *see generally* Point IIA2, below.

(6th Cir. 1996), *accord James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 276 (7th Cir. 1976). The AMERICAN EAGLE Marks are strong, enhancing the likelihood of confusion.

**_Similarity of the marks_** (Pl. Br. 20-22). The marks at issue must be compared "in light of what happens in the marketplace, [and] not merely by looking at the two marks side-by-side." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001) (internal quotation marks and citation omitted) (Def. Br. 11). Defendants' signage and countless consumer facing documents employ the unadorned word mark AMERICAN EAGLE FURNITURE—not the stylized AEF Design Mark (depicted at Pl. Br. 3), as Defendants disingenuously suggest (Def. Br. 10).[5]

Defendants do nothing to refute AEO's showing that AEO owns trademark rights in both AMERICAN EAGLE and AMERICAN EAGLE OUTFITTERS; that AMERICAN EAGLE FURNITURE incorporates the dominant portion of the AMERICAN EAGLE OUTFITTERS mark and the entire AMERICAN EAGLE Mark; that AEO is known as AMERICAN EAGLE; that AEO's brand is commonly referred to as AMERICAN EAGLE; and that if AEO were to open a standalone furniture store, AMERICAN EAGLE FURNITURE would be the most intuitive name for it (Pl. Br. 21-22). Defendants merely say that a quick Google search for "American Eagle" returns numerous hits (Def. Br. 12). The same is true for many strong marks, including APPLE, DELTA, TARGET, FIDELITY, SHELL, and FOX.

**_Similarity of the parties' goods and services_** (Pl. Br. 24-26). Hopscotching over the fact that the parties both offer retail **_services_** in the very same malls, Defendants argue only "that clothing and furniture are vastly different products" (Def. Br. 12). Yet the record clearly establishes that AMERICAN EAGLE OUTFITTERS is a lifestyle brand that offers a broad range of products, including products that are the same or closely related to Defendants'

---

[5] *E.g.*, Hooker Decl. Ex. 10 (Answer ¶¶ 20, 47), Ex. 11 (Def. Resp. to RTA ¶¶ 43-45), Ex. 3 (T. Aboussaf Dep. 108:15-113:14, Ex. 17 (AEFUR00080-84), Ex. 31 (AEFUR018976-79)); ECF No. 59 ("Def. Resp. to PSUF") ¶ 63.

products. Hooker Decl. Ex. 3 (T. Aboussaf Dep. 43:21-46:9); Def. Resp. to PSUF ¶¶ 16-17.
Defendants admit AEO's past furniture sales, AEO's on-going sales of home furnishings, and
AEO's future interest in reintroducing furniture in its product mix. *Id.* They also admit that AEO
has launched other retail brand extensions under the AMERICAN EAGLE Marks and that other
apparel retailers have expanded into furniture and furnishings. Hooker Decl. Ex. 11 ¶¶ 82-105.

In short, the parties offer overlapping services and products to overlapping consumers
under their marks. The actual confusion evidence further confirms that the public considers retail
furniture stores to be within AEO's natural zone of expansion. *E.g.*, *CAE*, 267 F.3d at 681.

***Area and manner of concurrent use*** (Pl. Br. 23-24). Defendants concededly operate
their AMERICAN EAGLE FURNITURE stores in the very same malls where AEO has long
operated retail stores and rely almost exclusively on foot traffic to attract shoppers. Def. Resp. to
PSUF ¶¶ 13, 23, 50, 55, 62. Their store signage looks like AEO's signage (*see* Pl. Br.2), which,
we submit, is hardly a coincidence. Defendants' only point here is that AEO does not operate
furniture stores (Def. Br. 12). The facts remain that Defendants opened their stores in precisely
the same geographic area (the very same malls) and prominently display the AMERICAN
EAGLE FURNITURE Mark on their store-fronts in the same manner as AEO and in a very
similar font. Def. Resp. to PSUF ¶ 63 (admitting use on of AMERICAN EAGLE FURNITURE
word mark on signage, fliers, hang tags, placard, packaging).

***Degree of care exercised by consumers*** (Pl. Br. 26-27). Defendants contend "[c]ommon
sense should instruct the Court that buying a $20 T-shirt to wear on occasion is a much lower
degree of care for a room full of furniture to be used every day and is expected to last for many
years" (Def. Br. 13). Of course, there is no proof that Defendants' shoppers typically buy "a
room full of furniture"; many invoices of record show far more modest purchases, and many

people who walk into or by Defendants' stores make no purchases at all. Even assuming, *arguendo*, furniture consumers are careful, that would not mitigate the consumer confusion as to affiliation or sponsorship that is likely to occur and is occurring here. Both parties offer affordable products, which only reinforces the public's erroneous conclusion that AMERICAN EAGLE FURNITURE stores are affiliated with or sponsored by AEO.

***Defendants' bad faith*** (Pl. Br. 27-28). Finally, "intent is one factor to consider in assessing likelihood of confusion, but it is not a necessary factor." *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F. 2d 862, 867 (7th Cir. 1983); *CAE*, 267 F.3d at 686. Defendants maintain they acted in good faith because they had never heard of AEO and own a registration for the AEF Design Mark (Def. Br. 16-17). To the contrary, Defendants ***did*** know about AEO as early as August 3, 2006 when the PTO specifically cited AEO's AMERICAN EAGLE OUTFITTERS mark against the AEF Design Mark application.

Defendants responded on November 21, 2006 that AMERICAN EAGLE OUTFITTERS is a "well know[n] shopping mall clothing store" but argued there was no likelihood of confusion because the AEF Design Mark "use[s] an elaborate American Eagle and flag design" that sets the mark apart from any other mark and is used for services "directed to the <u>Wholesale</u> furniture market." Hooker Decl. ¶ 54. As previously noted, when Defendants expanded into retail services in 2009, they jettisoned the AEF Design Mark, with its "elaborate American Eagle and flag design" and instead used AMERICAN EAGLE FURNITURE on their storefronts in a font and presentation evocative of AMERICAN EAGLE OUTFITTERS storefronts. Def. Resp. to PSUF ¶¶ 57-60.

Defendants proffer no innocent explanation for opening three successive AMERICAN EAGLE FURNITURE stores in malls where AEO already had stores (Def. Br. 16-17). And even

after receiving AEO's numerous demand letters, Defendants continued their activities with full

knowledge of AEO's prior rights. Hooker Decl. Ex. 10 (Answer ¶ 52). These undisputed facts

amply demonstrate bad faith.[6]

**B.    Defendants Do Not Dispute Any Fact Or Legal Principle Supporting AEO's Cancellation Claim**

AEO maintains Registration No. 3,428,434 should be cancelled because American Eagle

Furniture, Inc. ("AEF") (a) never has used the AEF Design Mark for "wholesale stores" and (b)

obtained it through fraud on the PTO (Pl. Br. 28-32). Defendants concede the first ground by

stating "Titanic Furniture served as the wholesale stores for American Eagle-branded products"

(Def. Br. 17). AEF's principals have admitted they operated only a warehouse, and did so under

the name TITANIC, not the AEF Design Mark. Hooker Decl. Ex. 3 (T. Aboussaf Dep. 105:14-

106:22), Ex. 4 (O. Aboussaf Dep. 9:17-25, 29:22-30:23). Defendants allude to using the AEF

Design Mark on products in the Titanic warehouse (Def. Br. 17). But trademark use on products

cannot demonstrate service mark use for "wholesale stores." (Pl. Br. 31). Because AEF has not

proffered admissible evidence showing it in fact used the AEF Design Mark as a service mark

for "wholesale stores," as it represented to the PTO, the Court should cancel its registration as

void *ab initio. Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1357 (Fed. Cir. 2009).

As to fraud on the PTO, Defendants assert they "were represented by experienced

trademark counsel which [*sic*] Defendants relied" (Def. Br. 18). This is the first time Defendants

have asserted an advice of counsel defense, and it comes too late, as discovery has closed.[7]

---

[6] *See, e.g., Johnson & Johnson v. Quality Pure Mfg., Inc.*, 484 F. Supp. 975, 979 (D. N.J. 1979) ("When a newcomer in the field adopts a trade dress confusingly similar to that of an established merchant, even innocently, or by chance, once the similarity is brought to his attention a failure or refusal to alter the trade dress to avoid the confusion is equivalent to an original and actual intention.").

[7] *Bank Leumi Le-Israel, B.M v. Lee*, 928 F.2d 232, 235 (7th Cir. 1991) (failure to raise an affirmative defense in a responsive pleading waives the defense); *MCI Telecomm. Corp. v. Ameri-Tel, Inc.*, 852 F. Supp. 659, 666 (N.D. Ill. 1994) (refusing to consider an affirmative defense raised for the first time in

Further, Defendants offer no evidence to refute AEO's showing that AEF misrepresented to the PTO that (1) the AEF Design Mark was being used for "wholesale stores" and (2) no other entity had prior rights (Pl. Br. 31-32). In fact, Defendants' submissions only confirm that AEF knew of but failed to disclose to the PTO the existence of a third party with earlier use of the AMERICAN EAGLE FURNITURE mark. ECF No. 60 ("Yi Decl.") Exs. 12-13; Def. Resp. to PSUF ¶¶ 45-48. AEF's registration should be cancelled on both grounds.

### C. Defendants' Laches Defense Should Be Dismissed

AEO seeks summary judgment dismissing Defendants' laches defense because Defendants progressively encroached on the AMERICAN EAGLE Marks, and AEO sent cease and desist letters to Defendants within one week of learning of their use of the AMERICAN EAGLE FURNITURE word mark at their retail stores (Pl. Br. 33-34; Gibbs Decl. ¶¶ 7-9). Defendants have cross-moved to dismiss based on laches, claiming AEO "slept on its rights since 2005" (Def. Br. 8). Yet Defendants have not established that AEO even knew about them in 2005. AEO only had constructive notice of AEF's existence from AEF's February 7, 2006 trademark application, which falsely claimed AEF was using the AEF Design Mark for "wholesale stores." Hooker Decl. Ex. 32. Moreover, AEO did not learn of any marketplace confusion until 2010 when AEO discovered Defendants were using the unadorned AMERICAN EAGLE FURNITURE mark for retail stores in the very same malls as AEO's stores, probably due to AEF's scant earlier use. Gibbs Decl. ¶¶ 8-9. This is classic progressive encroachment,[8] excusing any alleged delay—as Defendants' own authority establishes. *Ameripay LLC v.*

---

defendant's response to plaintiff's summary judgment motion); *Computer Network Corp. v. Compmail Sys., Inc.*, No. 84 C 6813, 1985 WL 2218, at *2 (N.D. Ill. July 10, 1985) (failure to plead affirmative defense until responding to summary judgment constitutes waiver of the defense).

[8] See *Oriental Fin. Grp. Inc v Cooperativa de Ahorro y Crédito Oriental*, Nos. 11-1473, 11-1476, 2012 WL 5073529, at *21-23 (1st Cir. Oct. 18, 2012) (applying progressive encroachment to dismiss laches defense and discussing consensus among federal circuits on the doctrine).

*Ameripay Payroll, Ltd.*, No. 04 C 5253, 2005 U.S. Dist. LEXIS 20453, at *9-13 (E.D. Ill. Sept. 6, 2005) (Def. Br. 8) (excusing five-year delay due to progressive encroachment).[9]

Defendants now claim AEO's suit is barred because AEO allegedly failed to enforce its marks against third parties. (Def. Br. 9). Of course, laches is a personal defense, and an infringer cannot evade liability by alleging the plaintiff failed to take action against third parties. R. Callmann, 4 *Callmann on Unfair Competition, Trademarks & Monopolies* § 23:29 (4th ed. 2012); *McCarthy* §§ 31:157-31:160 (*jus tertii* is a disfavored defense). Indeed, "courts have consistently held that the existence of other infringers, and thus other non-genuine goods, does not prevent a trademark owner from seeking relief from one infringer." *Philip Morris Inc. v. Allen Distribs., Inc.*, 48 F. Supp. 2d 844, 854 (S.D. Ind. 1999); *see also Tisch Hotels*, 350 F.2d at 614; *Seven-Up Co. v. Green Mill Beverage Co.*, 191 F. Supp. 32, 38 (N.D. Ill. 1961).

Further, Defendants have not established the existence of any third party infringements because they "did not introduce any evidence of actual use of [such] mark[s] by third parties nor did [they] introduce evidence that the third parties' marks were well-promoted or that they were recognized by consumers." *CAE*, 267 F.3d at 685.[10] Their inadmissible, unauthenticated Wayback Machine print-outs do not establish the nature and extent of any third party use.[11] Nor

---

[9] Defendants cite two cases in passing in their laches argument: *Chattanooga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792 (7th Cir. 2002) and *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 822-24 (7th Cir. 1999). Both are readily distinguishable on multiple bases, the most obvious of which is that the trademark owners' delays—20 years and 9-14 years, respectively—were dramatically longer than any delay Defendants here assert.

[10] *See also Morningside Grp. Ltd. v. Morningside Capital Grp., LLC.*, 182 F.3d 133, 139 (2d Cir. 1999) (reversing district court's reliance on "businesses that used [the mark] in their titles but were not shown to be using the mark within the relevant market"); *Eclipse Assocs. Ltd. v. Data Gen. Corp.*, 894 F.2d 1114, 1119 (9th Cir. 1990) ("Evidence of other unrelated potential infringers is irrelevant to claims of trademark infringement and unfair competition under federal law"); *Scarves by Vera, Inc., v. Todo Imps., Ltd.*, 544 F.2d 1167, 1173 (2d Cir. 1976) (significance of third-party use rests on use and consumer awareness).

[11] *Mortg. Mkt. Guide, LLC v. Freedman Report, LLC*, No. 06-CV-140, 2008 WL 2991570 (D.N.J. July 28, 2008) ("federal courts typically reject documents obtained from web archive services, unless they are accompanied by a 'statement or affidavit from [a representative] with personal knowledge of the contents of the [archive] website.'").

is there any evidence that AEO was aware of any of the websites cited by Defendants, with the exception of one to which AEO sent a demand letter. Yi Decl. Ex. 3 (Gibbs Dep. 40:14-46:7). Unsubstantiated allegations of third party use of the AMERICAN EAGLE FURNITURE mark cannot, as a matter of law, insulate Defendants from liability. *Tisch Hotels*, 350 F.2d at 614.

### D. Defendants' Admissions That The AMERICAN EAGLE Marks Are Valid Eviscerate Their Genericness Defense

Defendants' genericness defense is frivolous. Contrary to their claim, it is not AEO's position that "a valid mark can never *become* generic (Def. Br. 18, emphasis added). AEO clearly stated the fatal flaw in this defense: "Having admitted that AEO's registered marks are valid . . . . Defendants cannot possibly prove that AEO's marks are generic: when a mark is valid it cannot *be* generic" (Pl. Br. 34, emphasis added). Although they bear the burden, Defendants have not submitted a shred of evidence to show the AMERICAN EAGLE Marks are generic.[12]

## II. DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE DENIED

Defendants cross-move for summary judgment on their laches defense and AEO's federal dilution claim. Defendants' laches defense fails for the reasons in Point IC above; its dilution arguments are unavailing for the reasons set forth below.[13]

### A. The Record Contains Ample Evidence To Establish The Fame Of The AMERICAN EAGLE OUTFITTERS Mark

AEO's claim under the Trademark Dilution Revision Act ("TDRA") is not predicated on "several derivatives using the phrase 'American Eagle'" (Def. Br. 4) but on its incontestable,

---

[12] *See Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 776 (N.D. Ill. 2011) ("[A] plaintiff with a trademark registered in accordance with the Lanham Act is entitled to [the] presumption . . . that the plaintiff's registered trademark is not . . . generic . . . . The defendant may overcome this presumption with proof of . . . genericness, but the burden is on the defendant to make such a showing."); *see also Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 438 (7th Cir. 1999) (rejecting contention that RAMS was generic).

[13] While there are issues of fact requiring trial on the dilution claim, the dilution claim will not have to be tried if AEO prevails on its summary judgment motion, because AEO is entitled to the relief it needs on its trademark and unfair competition claims.

federally registered AMERICAN EAGLE OUTFITTERS mark, which has been in widespread

use since 1977. Under the TDRA, a "mark is famous if it is widely recognized by the general

consuming public . . . as a designation of source of the goods or services of the mark's owner."

15 U.S.C. § 1125(c)(2)(A). Fame is determined by evaluating factors including:

> (i) The duration, extent, and geographic reach of advertising and publication of the
> marks; (ii) The amount, volume, and geographic extent of sales of goods or services
> offered under the mark; (iii) The extent of actual recognition of the mark; [and] (iv)
> Whether the mark [i]s registered . . . on the principal register.

*Id.* Defendants do not contest the first, second, and fourth fame factors. Def. Resp. to PSUF ¶¶

13-17, 20-25, 29-31; Def. Resp. to RTA ¶¶ 1-23. As to the third factor, Defendants contend AEO

cannot demonstrate sufficient "actual recognition" of the AMERICAN EAGLE OUTFITTERS

Mark because (1) it has not conducted a fame survey and (2) the mark has achieved only niche

fame. (Def. Br. 4-7).

### 1.    A Survey Is Not Required And Ample Proof Establishes Pervasive Recognition Of The AMERICAN EAGLE OUTFITTERS Mark

Contrary to Defendants' contention (Def. Br. 5), a survey is not required to prove fame.[14]

*Dan-Foam A/S v. Brand Named Beds, LLC*, 500 F. Supp. 2d 296, 323-24 (S.D.N.Y. 2007)

(denying defendant's motion for summary judgment; holding that even absent a survey a fact

finder could find plaintiff's mark "possess[es] the requisite degree of recognition necessary to

maintain an action for trademark dilution.") (internal quotations omitted).[15]

Page constraints preclude AEO from reciting here all of the evidence proving the fame of

the AMERICAN EAGLE OUTFITTERS mark, which is summarized in the Supplemental

Declaration of Charles Hooker submitted herewith. Suffice it to say, American Eagle Outfitters,

---

[14] The *McCarthy* section Defendants cite (Def. Br. 5) states: "***One way*** to evidence the extent of actual recognition of the mark would be through the use of a survey." 4 *McCarthy* § 24:106 (emphasis added).
[15] *Eli Lilly & Co. v. Natural Answers, Inc.*, 86 F. Supp. 2d 834, 847-48 (S.D. Ind. 2000) (PROZAC famous absent survey), *aff'd*, 233 F.3d 456 (7th Cir. 2000); *adidas Am. Inc. v. Payless Shoesource, Inc.*, 529 F. Supp. 2d 1215, 1245 n.11 (D. Or. 2007).

Inc. launched the AMERICAN EAGLE OUTFITTERS brand more than 35 years ago in 1977, has been publicly traded since 1994, enjoys widespread media coverage, and has spent hundreds of millions of dollars advertising for the mark in every conceivable media. There are over 900 AMERICAN EAGLE OUTFITTERS stores in the United States alone, and countless people who never enter an AEO store nevertheless are exposed to the mark from AEO's prominent store signage—including its 25 story, 15,000 square foot LED billboard in the heart of Times Square—and its ubiquitous advertising, unsolicited media coverage, Internet presence, and merchandise. Among other impressive rankings, Interbrand Design Forum's *Most Valuable Brands 2009* ranked AMERICAN EAGLE OUTFITTERS as the 29th most valuable brand in the United States, ahead of BANANA REPUBLIC, JCREW, and BARNES & NOBLE. Grover Decl. Ex. 9. Similarly, a July 2008 *Womens Wear Daily* report ranked AMERICAN EAGLE OUTFITTERS 40th among the top 100 brands "women know best" (*id.*), ahead of BURBERRY, which has been held famous under the TDRA. *Burberry Ltd. v. Euro Moda, Inc.*, No. 08 Civ. 5781, 2009 WL 1675080, at *12 (S.D.N.Y. June 10, 2009).

Contrary to their assertion that they had never heard of AEO when they opened their retail stores (Def.Br. 17), Defendants advised the PTO in 2006 that AMERICAN EAGLE OUTFITTERS "is a well know[n] shopping mall clothing store." Hooker Decl. Ex. 34. In short, there is ample evidence, most of which is uncontroverted, sufficient to support a finding that the AMERICAN EAGLE OUTFITTERS mark is famous, and genuine issues of material fact preclude a finding that it is not.

###   2.    The Percentage Of The Public That Recognizes The AMERICAN EAGLE OUTFITTERS Mark Is Not Limited To AEO's Target Consumer

Defendants erroneously contend the AMERICAN EAGLE OUTFITTERS Mark has achieved only niche fame because AEO's target consumer is 15-25 years olds (Def. Br. 5-8). As

a factual matter, a significant percentage of AEO's customers are over the age of 25 (Grover Decl. ¶ 11); and public recognition of the AMERICAN EAGLE OUTFITTERS mark extends far beyond its core demographic. Supp. Hooker Decl. ¶¶ 6-, 10-12; Kubinski Dep. 42:8-10; ECF No. 61 (DSUF) ¶ 71. As a matter of law, numerous brands that target a subset of the general public have been held famous under the TDRA. *E.g.*, *New York City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 318, 321 (S.D.N.Y. 2010) (NEW YORK CITY TRIATHLON); *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 525 (S.D.N.Y. 2009) (VIAGRA); *Burberry Ltd.*, No. 2009 WL 1675080, at *12.[16] Like these marks, the AMERICAN EAGLE OUTFITTERS mark is famous.

## CONCLUSION

Defendants have failed "to present evidence of 'evidentiary quality' (*i.e.*, admissible documents or attested testimony)" (Def. Br. 3) to oppose AEO's motion. In contrast, AEO has submitted ample evidence proving that the AMERICAN EAGLE OUTFITTERS Mark is famous and that AEO did not unreasonably delay in filing suit. Accordingly, Plaintiffs motion for summary judgment should be granted and Defendants' cross-motion denied.

DATED: December 3, 2012

Respectfully Submitted,

By: */s/ Charles H. Hooker III*

Debra R. Bernard
Jeremy L. Buxbaum

---

[16] *Defendants cite Board of Regents, the University of Texas System v. KST Electric, Ltd.*, 550 F. Supp. 2d 657, 675 (W.D. Tex. 2008), as an example of niche fame, but the University of Texas marketed its longhorn logo primarily in Texas, and the evidence of its fame related entirely to football broadcasts, football sponsorships, and sports articles. In contrast to *University of Texas*, AEO has provided evidence of, inter alia, its ubiquitous nationwide presence, its extensive national media coverage and marketing, and its rankings as one of the top U.S. retail brands. E.g., Grover Decl. Exs. 4; *Dallas Cowboys Football Club, Ltd. v. America's Team Prop., Inc.*, 616 F. Supp. 2d 622, 643 (N.D. Tex. 2009) (AMERICA'S TEAM held famous among the general public).

PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
(312) 324-8400
(312) 324-9400

Lisa Pearson (LP 4916)
KILPATRICK TOWNSEND & STOCKTON LLP
1114 Avenue of the Americas
New York, New York 10036-7703
lpearson@kilpatricktownsend.com
(212) 775-8700
(212) 775-8800

Charles H. Hooker III (GA 375622)
1100 Peachtree Street, N.E., Suite 2800
Atlanta, Georgia 30309-4530
chooker@kilpatricktownsend.com
(404) 815-6500
(404) 815-6555

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing PLAINTIFFS' COMBINED RESPONSE AND

REPLY SUMMARY JUDGMENT MEMORANDUM has been served upon the following

counsel via the Court's ECF filing system:

>
> Kenneth M. Sullivan
> Dennis F. Esford
> Tressler LLP
> 233 S. Wacker Drive
> 22nd Floor
> Chicago, IL 60606
> KSullivan@tresslerllp.com
> DEsford@tresslerllp.com

DATED:   December 3, 2012


*/s/ Charles H. Hooker III*

17